## WITTENBERG, et, Appellant, v BOARD OF LIQUOR CONTROL et, Appellees.

Ohio Appeals, Second District, Franklin County.

No. 3991. Decided April 21, 1948.

Isadore Topper, Columbus, for appellant.

Hugh S. Jenkins, Atty. Genl., Charles G. Schnur, Asst. Atty. Genl., Columbus, for appellees.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Franklin County affirming an order of the Board of Liquor Control revoking the class D-5 permit of the appellant.

The appellant has for many years and until recently operated the Imperial Hotel in Cleveland, Ohio, consisting of twenty-seven rooms. In conjunction with the operation of the hotel he maintained a night club under a permit issued by the Department of Liquor Control, the last permit issued to him being dated December 12, 1945.

Prior to September 25, 1946, charges were preferred against the permit holder in that on April 10, 1945, he permitted one Joanne Theresa Beldon to engage in indecent conduct and practice upon the permit premises; that on June 22, 1946, appellant permitted his premises to be used in a lewd and lascivious manner and on June 22, 1946, and July 14, 1946, operated and conducted his business in a disorderly manner. On the 25th of September, 1946, the citation was assigned for hearing. The hour of the hearing having arrived and the prosecuting witnesses not appearing, the bill of exceptions discloses that, upon suggestion of counsel for the appellee and upon motion of one of the members of the Board, the Board voted to dismiss the complaint. No entry of dismissal in conformity to the oral action of the Commission was prepared or spread upon the record. On the hearing day in the afternoon the witnesses for appellee having appeared, a motion was filed for a "reconsideration of this matter and for an order reassigning this cause for hearing on the merits". The Board sustained this motion and in its entry recited the reason for the nonappearance of the witnesses at the time that the matter was first assigned and reassigned the cause for hearing on the merits at 9:00 A. M. October 16, 1946. On this date the charges against the appellant were tried and at the conclusion of the testimony the Board found all charges to have been proven and ordered his permit revoked. From this order an appeal was prosecuted to the Common Pleas Court where the action of the appellee Board was sustained.

Five errors are assigned in appellant's brief, some of which are not urged in this Court.

The first error assigned is that,

"The Board of Liquor Control had no power to reconsider and set aside its order dismissing the citation and case against

the appellant * * * and had no jurisdiction to hold a subsequent hearing on such citation."

This assignment is not well made for several reasons:

1. There was no hearing, as contemplated by the Code, of the citation against appellant.

2. There was no dismissal by the Board of which this Court may take cognizance.

3. If the oral statement of the members of the Board constituted a dismissal, and it must be conceded that such action was the basis of a formal entry of dismissal,—the Board had implied power under the circumstances appearing, to reinstate the complaint for reconsideration.

(1) **Sec. 6064-3 GC,** defining executive and administrative powers and duties of the Board of Liquor Control and making provisions for certified copies of rules and regulations, among other things, provides:

"The Board of Liquor Control shall have power:

(3) To consider, hear and determine all appeals authorized by this act to be taken from any decision, determination or order of the Department, and all complaints for the revocation of permits. The Board shall accord a hearing to any person so appealing, or complained against, in which such person shall have the right to be present, to be represented by counsel, to offer evidence, and to require the attendance of witnesses. In any such case, the decision of the Board, **made after such hearing,** shall be final." (Emphasis ours.)

That which is set up in this sub-section of the Code, which we have just quoted, as constituting a hearing was not conducted on this citation. The action taken, if carried into a formal entry, would have been tantamount to a dismissal for want of prosecution.

(2) The action taken by the Board relating to the dismissal would have supported an entry to that effect but such entry was not prepared or spread upon the record. The Board, in the capacity in which it served on the citation herein under consideration, was a quasi-judicial body and its order should be made in accord with the law controlling orders by such a body. It is fundamental that a court speaks only through its entries spread upon the record and it is only safe procedure that such rule be followed by an administrative body when acting judicially. Only by the observance of this procedure will the action of the Board be made definite and certain.

(3) The last paragraph of §6064-3 GC provides:

"The foregoing enumeration of powers of the Board of Liquor Control shall not derogate from or prejudice any other power expressly or impliedly granted to the Board by any other provision of this act; * * *."

Manifestly, the circumstances appearing here would support the action of the Board if under the act it is given any implied authority whatever. That there is such authority granted by the Liquor Control Act is recognized by the language of the Code from which we have just quoted. We have examined the many cases cited in both briefs and are of opinion that where courts have held that administrative bodies are restricted in their jurisdiction to the powers expressly granted, distinction may be made because of the facts appearing in the cases. **Davies, et al., Civil Service Commission v. State, ex rel. Kennedy, Director of Public Service, 127 Oh St 261,** illustrates the distinction which may be drawn. There, the Civil Service Commission undertook to assert its jurisdiction upon appeal from an action of dismissal of employes in Departments of the city other than Fire and Police, as to which only it was granted jurisdiction. The facts presented are not comparable to those appearing here.

But it is urged that the appellee in its motion to reconsider the citation did not observe Regulation VII which it had promulgated. We do not believe that the regulation controls because it relates only to a rehearing which is predicated upon a hearing in the first instance.

Under (a) of the first error assigned, it is urged that the action of the Board in granting a rehearing was not fair, open and impartial because of certain influence which it is asserted the Governor exerted upon the Board. This assignment is not exemplified upon the record because when the evidence tending to establish the claim was proffered its acceptance was refused and such action is not made the subject of error. It also further appears that the only evidence proffered upon this question was a newspaper article, marked as an exhibit, to which counsel made reference in his inquiry of a witness, which is not attached to the bill of exceptions and this Court is without means of determining whether or not it would have been probative of the claim that the Board had been unduly influenced.

The next errors assigned are:

"2. The Board of Liquor Control had no authority to hear evidence or to take disciplinary action against the appellant under his existing permit for a known alleged violation occurring during a prior permit."

"3. There is no competent, admissible or substantial evidence that supports the finding and order of the Board of Liquor Control and the Court of Common Pleas of Franklin County that the appellant operated his business in a disorderly manner and permitted his premises to be used in a lewd and lascivious manner."

We discuss these assignments together because in our view of the charge involved in the second assignment, it becomes immaterial whether or not the Board had a right to consider it for the reason that it was not established by the evidence.

This charge was that the permit holder permitted one Joanne Theresa Beldon to engage in indecent conduct and practices upon the permit premises. The facts developed were that Joanne Theresa Beldon was held out as a palmist. She dressed as a gypsy and circulated among the patrons of the night club. On the occasion under consideration a patron was seated at the bar and the palmist on another stool alongside him. A Liquor Inspector occupied the stool on the other side of the palmist. She was observed holding the right hand of the patron and her other hand was on the outside of his right leg and some inquiry was made of her as to what she charged, to which she replied to effect that she made no charge—anything that he wanted to give her. Whereupon the patron handed her $30.00, $10.00 of which she passed across the bar to the appellant. At this juncture the Inspector intervened, saying to them that this practice was not permitted, whereupon the palmist said, "Nuts to you". It also appears that the palmist had been regularly employed for several years in the night club, carrying on this profession among the patrons thereof.

Many inferences may be drawn from the conduct appearing, one of which, and probably the most reasonable, is that the patron was drunk—else there is no accounting for his handing over $30.00 to the palmist for all that appears in the record. It is not probable that she was making any effort to read the patron's palm but the whole affair is not unrealistic of what might be expected to be carried on in the general atmosphere of the establishment as it appears from the record. But without engaging in conjecture, the inference may not be properly drawn that the palmist upon the facts appearing engaged in indecent conduct and practice upon the permit premises. There is no showing of such intimate familiarity with the person of the patron, or any language used, which will permit any reasonable conclusion that her conduct was in-

decent, although improper and inappropriate. The charge is not the maintaining of a palmist or the practice of palmistry in the place of permittee contrary to a regulation of the Board. Had it been such a charge, and had such conduct been prohibited, it is established by the admission of the appellant.

Upon the specific assignment of error that the Board had no authority to consider a known violation of the Liquor Control Act or rule and regulation of the Board which had occurred prior to the issuance of the license which was revoked, we hold that to consider such evidence was not prejudicially erroneous because of the waiver which was exacted from the permittee prior to the issuance of the license which was revoked.

We then come to the material and controlling assignment of error on this appeal, namely, does the proof in the record support the second and third charges against the appellant, namely, that he operated and conducted his business on the licensed premises in a disorderly manner and permitted the licensed premises to be used in a lewd and lascivious manner on the two dates set out in the charge?

The business establishment of the appellant must have been conducted in a limited area in a compact building. Although there were but 26 rooms in the hotel, it was a structure of four stories, all floors above the first being reached by stairway only. On the ground floor was the lobby, the clerk's desk of the hotel and the bar.

The clerk testified in substance that he was instructed by the appellant to keep the occupancy of the rooms as full as possible; that pursuant to this policy at times some of the rooms would be occupied more than once during the night. A police officer in the City of Cleveland testified that in a conversation with the appellant, succeeding the visits of the officers to the hotel, he stated that in the operation of the hotel the rooms at times were rented on an average of three times a night.

At about 10:30 on the night of June 22, 1946, Lieutenant John Fitzgerald, accompanied by Patrolmen Boodman and Barrett, entered the Imperial Hotel, went to the registration desk, talked to the clerk, inquired about the registration, requested the cards, looked them over and then checked the rooms occupied by the registrants. The total number of rooms occupied on this occasion was seven. The total number of occupants was fourteen, two in each room, a man and a woman. Their cards had been signed either husband and wife or Mr. and Mrs. Upon being admitted to each room it was found that the occupants were in the nude. In most of the rooms the women were in bed. All of them admitted that they were occupying the rooms for the purpose of sexual

intercourse. The registration cards in and of themselves indicated to the police officers that for various reasons they were not representative of registration of married persons. All of the occupants of the rooms were taken to police headquarters and booked and all of the men were found guilty. The women were released upon signing of waivers. It will be observed that the occupancy of the hotel on this night was one hundred per cent by patrons who were there for immoral purposes.

Substantially the same situation developed upon a second visit by the police to the hotel on the night of July 14, 1946, with the exception that of the six registration cards, which to the police were suspicious, there were five couples only who were in the rooms for immoral purposes and there was a fuller occupancy of the rooms than on the prior visit. It was testified by one of the officers that,

"In the six cards I pulled from the files, I found the cards ran ten minutes apart, six minutes, and the highest interim of time being half hour. I suggested business was pretty good, and he (the clerk) said, 'It is our policy to keep those rooms filled all night long'."

On both occasions in many of the rooms were found glasses containing a small portion of liquor indicative of that which was left of drinks taken from the glasses.

On neither of the occasions was the proprietor, the appellant, seen on or about the premises.

It is claimed that there is no sufficient proof by competent evidence of the charges which we have heretofore discussed.

Objection was made at the original hearing to the admission of the testimony of the officers to the effect that the occupants of the rooms admitted that they were there for sexual intercourse. This was admissible upon the substantive question of the purpose for which the rooms were occupied, although what the occupants said to the officers would not be admissible to bring home to the clerk, or the appellant, knowledge of the purpose of the occupancy because neither was present at the time that the statements were made.

It is further claimed by appellant that it is essential to the establishment of the charges that knowledge of the subject matter thereof be proven as against the appellant; that the charge that the proprietor **permitted** the rooms to be occupied connoted some overt act or actual participation in admitting the patrons to the rooms or that he knew that the rooms were being employed as charged. Actual knowledge is not established as to the appellant. Even if the charges were heard as upon criminal procedure, there is enough circumstantial evi-

dence in this record to permit the conclusion that the appellant had such notice as that he should have known of the acts to which the rooms in the hotel were put.

The hearing proceeded as provided in Section 7 of Regulation VII of the Board of Liquor Control:

"The production of evidence on the hearing of the appeals and hearings on revocations and the determination thereon, shall be governed in general by the rules of evidence and burden of proof required by Ohio Courts in civil cases."

If the charges here are to be determined as upon civil procedure, then the knowledge of the clerk, the agent and employe of appellant, as to the subject matter of the charges would be imputed to the appellant, his principal.

In Dorris v. McKamy, Cal. 180 Pas. 646, the court had under consideration an allegation that the marshal "permitted" prostitutes to occupy certain buildings. The Court held that "as charged, permit involved no intent but implied mere passivity, abstinence from preventive action". At page 649, the writer of the opinion says:

"The word permit is a word of considerable elasticity; it lacks clear-cut and precise definiteness. As defined by Webster and others, permit implies no affirmative act. It involves no intent. It is mere passivity, abstaining from preventive action." Citing In re: Thomas (D. C.) 103 Fed. 272, 274.

It must always be kept in mind in this appeal that the charges were not, nor were they intended to be, that the appellant had committed any criminal offense. Nor were they predicated upon any specific cause set out in §6064-25 GC, but were grounded squarely upon that part of the action which provides for revocation of the permit,

"For violation of any of the applicable restrictions of this act or of any lawful rule or regulation of the Board, or other sufficient cause, * * *." (Emphasis ours.)

We have held in State v Hawley, 44 N. E. (2d) 816, that the term "other sufficient cause" is a ground for suspension or revocation of a permit over and beyond those which may be set out in any of the specific applicable restrictions of the act or of any lawful rule or regulation of the Board.

It has many times been held that there is no vested contract or property right in a liquor license and in State, ex rel. Zugravu v O'Brien, et al., 130 Oh St 23, 2nd syllabus, it is said:

"Permits to carry on the liquor business which are issued under the provisions of the Liquor Control Act are mere licenses, revocable as therein provided, and create no contract or property right."

Citing **State v Hipp, 38 Oh St 199,** "A license is a permission granted by some competent authority to do some act which, without such permission, would be illegal."

The dominant purpose of the Liquor Control Act is to require permittees to so operate under their permits as to maintain public decency, sobriety and good order in the place licensed. §6064-3 GC. Any failure on the part of a permittee to observe the obligation expressly and impliedly enjoined upon him in any substantial manner affords sufficient cause for the revocation of his license.

We are cited to Burns v City of Columbus, 13 O. N. P. (N. S.) 508, for the proposition that it was incumbent upon the Department of Liquor Control to prove that the permit holder had actual knowledge that the persons who registered had given false, fictitious or assumed names, that they were unmarried, and that they intended to engage in unlawful acts. The law in the cited case was pronounced in a criminal prosecution wherein the ordinance, which it was charged was violated, made it mandatory that express knowledge of the defendant be established.

Sec. 13031-13 GC.:

"From and after the passage of this act it shall be unlawful to keep, set up, maintain or operate any place, * * * for the purpose of * * * lewdness * * *; or for any person to permit any place, * * * owned by him or under his control to be used for the purpose of * * * lewdness * * *, with knowledge or reasonable cause to know that the same is, or is to be, used for such purpose, * * *."

The facts appearing here, in our judgment, amply supported the conclusion that the licensee had reasonable cause to know that the place which he was operating was to be and was used for lewdness and the licensed premises was a disorderly place which should have been known by the appellant, even though the specific purposes and acts admitted by the occupants of the rooms may not have been shown to have been directly brought to his attention.

There are other errors assigned in the brief of appellant but they are not urged in oral presentation and we assume are not pressed for decision.

74

We find no error in the judgment of the Common Pleas Court affirming the order of the Board of Liquor Control revoking the permit of the appellant.

WISEMAN, PJ, and MILLER, J, concur.