RAHAL, D. B. A. DANNY'S BAR, APPELLANT, *v.* LIQUOR CONTROL
COMM., APPELLEE.

[Cite as Rahal v. Liquor Control Comm., I Ohio App. 2d 263.]

(No. 7750—Decided February 10, 1965.)

*Mr. D. J. Lombardo,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. David L. Kessler, Mr. J. Richard Lumpe* and *Mr. James E. Rattan,* for appellee.

DUFFEY, J. This is an appeal from the Common Pleas Court of Franklin County in a proceeding based on Section 119.12, Revised Code. Appellant, a liquor permit holder, was charged with two violations of Regulation 52 of the Ohio Board of Liquor Control involving the use of indecent language on the premises. Upon a finding of guilty, her license was ordered suspended for 35 days. The order was affirmed by the Common Pleas Court.

Regulation 52, as pertinent here, provides:

"No *permit holder* shall *knowingly* or *willfully allow* in, upon or about his licensed premises improper conduct or (of) any kind, type or character * * * or any indecent, profane, or obscene language * * *." (Emphasis added.)

On June 24, 1963, the Director of the Department of Liquor Control issued an order to check two listed premises, the order being supplementary to a previous one for thirteen other locations. No reason for the investigation is stated. The order authorized the investigation to be made any time between June 24, 1963, and July 27, 1963. We express no opinion on whether this procedure qualifies under Regulation 61-B so as to exempt the agents from the requirements of Regulation 61-A.

On July 23, 1963, a violation notice was served on an employee of the permit holder. This notice charged "improper conduct" on the dates of July 1, 1963, and July 3, 1963, but without specification of the time, or of what conduct, or by whom it was performed. A notice of hearing was issued on August 2, 1963. This notice stated the charges against the appellant as follows:

"*Violation No. 1*—On or about July 1, 1963, *your agent* or *employee* did knowingly or willfully allow in and upon or about the permit premises improper conduct, to-wit, the use of obscene and profane language—in violation of the provisions of the Liquor Control Act and regulations of the Liquor Control Commission.

"*Violation No. 2*—On or about July 3, 1963, *your agent* or

*employee* did knowingly or willfully allow in and upon or about the permit premises improper conduct, to-wit, the use of obscene and profane language—in violation of the provisions of the Liquor Control Act and regulations of the Liquor Control Commission.'' (Emphasis added.)

At the hearing held on August 19, 1963, testimony of the agents identified for the first time who allegedly committed the improper conduct. (The evidence would indicate that an earlier inquiry was made for information on the charges and that this was refused.) No question was raised in this court as to whether this procedure provided the appellant with reasonable notice of the charges to be defended, and we express no opinion on the matter.

The evidence shows that on the dates involved the appellant had in her employ one Jerri Santello. At the time of the alleged violations, she was working behind the bar serving drinks. There was another woman employee also present and also working behind the bar. There is no evidence that Jerri Santello had, or appeared to have, any managerial authority, or could be said to be in charge of the premises at the time. The permit holder's manager testified that he was on duty at both of the alleged times, although he did not recall the agents being present, and admitted he could have been off the premises during their visits. He testified that his normal working hours were from 8:30 a. m. to 6:30 p. m., and that he returned at about 10:00 p. m. or 11:00 p. m., remaining until closing at 3:30 a. m. The agents' testimony is that Jerri Santello made several indecent statements on both dates. The legal issue presented is whether under these facts it can be said that the ''permit holder'' did ''knowingly or willfully allow'' her employee to use such language.

There is some misunderstanding which appears to have arisen over the last fifteen years concerning the liability of a permit holder under Regulation 52 for the acts of others. The problem has been compounded by several rather sweeping statements of a general nature found in a secondary authority. See 31 Ohio Jurisprudence 2d 135 and 195, Intoxicating Liquors, Sections 58 and 138.

By its terms, Regulation 52 is concerned with improper conduct which the permit holder allows to occur in his estab-

lishment. Although it certainly covers the conduct of the permit holder himself, its primary thrust is at the acts of others, whether employees, patrons, or simply persons permitted to be on the premises. An examination of the other regulations concerned with conduct graphically demonstrates the distinction in the liability imposed. Pertinent regulations are those from Regulation 46 through Regulation 60. In five of these, the regulation explicitly applies to "the permit holder, his agent or employee." See Regulation 47 (Refilling Bottles or Selling Brands Not Ordered); Regulation 53 (Gambling Conviction); Regulation 55 (Possession of Spirituous Liquor); Regulation 59 (Solicitation of Patrons by Permit Holder or Employees); Regulation 60 ("Off-Limits" Rule for Military). Cf., also, the wording of Regulation 61.

There are three regulations which apply only to the permit holder, and which on their face do not include the agent or employee. See Regulation 52; Regulation 56 (Permitting Minors to Handle Beer and Liquor); Regulation 59 (Solicitation of a Patron by a Patron). Regulation 56 should be compared, however, to Section 4301.22, Revised Code. It is interesting to note, also, that in Section 4301.22, Revised Code, the first four prohibitions are unqualified bans, while the last three apply only to the act of a permit holder.

In our opinion, the phrase "permit holder" as used in Regulation 52 cannot be interpreted as including the agent or employee. Under that regulation, the act of an agent or an employee is not per se the act of a permit holder. Further, Regulation 52 explicitly requires that the permit holder "knowingly or willfully allow" the improper conduct. Cf. the wording of Regulation 60. In our opinion, *scienter* is also a required element of a violation of Regulation 52.

We are not, of course, deciding whether the public interest or the cause of liquor control would or would not be better served by a more stringent regulation. Considering the many varieties of conduct covered by this catchall regulation, the imposition of strict liability for any act of an employee would seem harsh. However, these are policy questions for the Legislature or the Liquor Control Commission, which may always amend its regulations if it sees fit.

There remains the difficult question of the evidence neces-

sary to show that the permit holder knowingly allowed the conduct. In this connection, a sharp distinction should be drawn between a natural person, as in this case, and a corporate permit holder. As a mere legal entity which must act through natural persons, the doctrines of imputed knowledge and responsibility do apply to a corporate permit holder. The type of agent or employee who does the act or allows the conduct of another such as to impose responsibility on a corporation is clearly indicated by the Supreme Court in *Henry's Cafe, Inc.,* v. *Board of Liquor Control* (1959), 170 Ohio St., 233, at 235.

Assuming the proper corporate agent or an individual permit holder, the evidence need only be such as to give rise to the inference of knowledge and permission, just as is true of any ultimate fact. The various cases involving Regulation 52 illustrate this, although some of the descriptive words in the opinions may have been misleading.

It would be well to set aside the case of *Wittenberg* v. *Board of Liquor Control* (1948), 52 Ohio Law Abs. 65. The court there did state that the knowledge of the employee would be "imputed" to his employer. However, the facts show a continued course of conduct sufficient to permit an inference of knowledge by the permit holder. More importantly, that case does not involve Regulation 52, which was not adopted until two years later. The charges there were based upon a broad statutory provision permitting revocation for "sufficient cause."

Similarly, cases such as *Wallace* v. *Board of Liquor Control* (1952), 64 Ohio Law Abs. 477, are clearly distinguishable. *Wallace* involved a refusal to grant a renewal. While violation of a specific regulation, such as Regulation 52, can be a ground for refusal to renew, renewal cases involve quite distinct and broad standards. Nothing in *Wallace* involved Regulation 52 as such. The grounds for refusal to renew included unsanitary conditions, intoxicated persons on the floor and in booths asleep, altercations, and employees drinking from the bottle. We would agree with the court's statement in that case that the permit holder there could not evade responsibility for such conditions by urging that "he did not know what was going on." However, we see no relevance between that case and a specific charge under Regulation 52.

Several decisions of this court's predecessor establish the evidentiary requirements for knowledge or, more accurately, proof of knowingly allowing improper conduct by others. In *Burger* v. *Board of Liquor Control* (1955), 72 Ohio Law Abs. 493, the charge was knowingly allowing indecent conduct in the form of loitering and solicitation by prostitutes. The charges improperly stated that "you [the permit holder] and/or your agent or employee" knowingly allowed the conduct. In upholding the charges, the board failed to differentiate between a finding that the acts were knowingly allowed by the permit holder or only by the agent or employee. The bartender, who was in full charge of the business, had full knowledge and participated in the solicitation. However, there was also evidence from which to find that the permit holder also knew. The court stated, at page 494:

"* * * We cannot say upon what theory the department and the board made their determination that the charges had been substantiated and we cannot invade their province of weighing and evaluating the testimony."

In *Kosick* v. *Board of Liquor Control* (1955), 74 Ohio Law Abs. 237, the same charges were made. The court, in specifically commenting on Regulation 52, stated, at page 238:

"* * * The language requires not only allowance of the improper and immoral activity against which the rule is directed, but that it be done knowingly and wilfully and the rule provides that this knowledge and wilfullness apply to the permittee."

A possible misleading statement is found in the opinion. The court stated, at page 238:

"The broadest possible construction that can be given to this rule in favor of the department and the board is that the acts complained of should have been known by the permittee, either directly or by imputing the knowledge of a bartender or one in charge, to the permittee."

The comment on imputed knowledge has been troublesome. However, in context, it is clear that the word "imputing" was meant in a loose and perhaps improper sense of circumstantial evidence, *i. e.*, that the knowledge and actions of the agent may under proper facts be evidence from which an inference of the permit holder's knowledge can reasonably be drawn. The court

in that case went on to point out that there was no proof of "express" knowledge by the permit holder, and that the appellee claimed that the board's findings were supported by "circumstantial evidence in the record." After reviewing the evidence at some length, the court concluded that it did *not* support the findings of a violation. The judgment of the Common Pleas Court affirming the order of the board was reversed. See, also, *Smith* v. *Board of Liquor Control* (1954), 96 Ohio App. 396.

It is true that several Common Pleas Court cases have directly adopted the doctrine that under Regulation 52 the knowledge and acts of any employee may be "imputed" to the permit holder regardless of proof of knowledge by the permit holder himself. These decisions rest on *Wittenberg* and *Wallace* which were distinguished above. There would also appear to be some confusion between Regulation 52 and charges under other regulations or statutes which do involve strict liability such as that of sales to minors, etc. The most notable example of this is the case of *111 Bar, Inc.*, v. *Board of Liquor Control* (1955), 75 Ohio Law Abs. 247, affirmed 75 Ohio Law Abs. 407, appeal dismissed 165 Ohio St. 507.

In *111 Bar, Inc.*, v. *Board of Liquor Control* (1955), 75 Ohio Law Abs. 247, one charge was based upon Regulation 52 and the other was based upon the conviction of an agent. By express statutory provision, the conviction of an agent imposes strict liability upon a permit holder regardless of knowledge. See Section 4301.25 (A), Revised Code. However, even though the penalties ran concurrently, the Common Pleas Court went on to hold that the knowledge of the waitress "may be imputed to the permit holder." The court upheld the Regulation 52 charge despite a finding that the permit holder had no "actual knowledge" of the conduct. The court cited the irrelevant cases of *Wittenberg* and *Wallace*. Upon the appeal to this court, the question was squarely presented. The trial court was affirmed but without specific discussion of the question.

Insofar as *111 Bar, Inc.*, appears to hold that in a charge based on Regulation 52, as then and now worded, a violation may be based on the imputing of the knowledge or act of an agent or employee to the permit holder, regardless of any proof as to the knowledge of the permit holder, we hereby overrule

that case. We hold that where the permit holder is a natural person, there must be substantial, reliable and probative evidence from which to find that the permit holder had knowledge and allowed the conduct. If the permit holder is a corporation, there must be such evidence as to a proper agent of the corporation.

Another troublesome case has been that of *Harger* v. *Board of Liquor Control* (1957), 80 Ohio Law Abs. 23, affirmed by this court in 80 Ohio Law Abs. 25. This case also involved charges under Regulation 52 for prostitution. The facts as they might relate to the permit holder are not developed to any extent, but would appear to support an inference of knowledge. The Common Pleas Court chose to decide the case on the premise that the permit holder is responsible for the acts of his employee. The court cited *Wittenberg, Wallace* and *111 Bar, Inc.* However, this court, in affirming, upheld the lower court on the "weight of the evidence on the controverted issue of knowledge." In commenting on the question of "imputed" knowledge, this court said, at page 25:

"It is no longer an open question, in this court, that knowledge of the permit holder of the acts of his employe may, *if the circumstances warrant,* be imputed to him. The cases from this jurisdiction cited and commented upon by counsel for both parties so hold.

"This imputed knowledge is not absolute and *must be evaluated in the light of all of the evidence. * * *"* (Emphasis added.)

While we do not consider the use of the word "imputed" as desirable, we would accept the quoted statement as accurate. It implies that which we now hold, *i. e.,* that there must be evidenec from which knowledge can be inferred. In this and other cases cited, the court simply exhibited a liberal attitude in favor of the board on the issue of the sufficiency of the evidence from which knowledge could be inferred.

One last case ought to be mentioned. In *Longona* v. *Board of Liquor Control* (1958), 79 Ohio Law Abs. 385 and 387, the husband of the permit holder was acting as bartender. In the course of an altercation, he seized a gun and killed a patron. In reversing a finding of a violation of Regulation 52, this court cited *Kosick* v. *Board of Liquor Control* (1955), 74 Ohio Law

Abs. 237, discussed *supra*. The opinion appeared to be based on the ground that the act of the bartender was not within the scope of his employment. Certainly not every act of an employee on the premises is within his employment. However, it should also be noted that the court there stated that there was no evidence from which "an inference could be drawn" as to the permit holder personally knowing of and permitting the act.

In summation, we reaffirm the holding in *Kosick* that Regulation 52 "requires not only allowance of the improper and immoral activity against which the rule is directed, but that it be done knowingly and wilfully and the rule provides that this knowledge and wilfullness apply to the permittee." We further hold that in the case of a permit holder who is a natural person, there must be evidence, either direct or circumstantial, that the conduct of another person, whether agent, employee or patron, was known to and allowed by the permit holder.

In the present case, there is no evidence to support such an inference. There is nothing to indicate that the conduct here was an extended or continued course of conduct by the barmaid as opposed to two isolated incidents of the usage of indecent language. The particular incidents involved were not shown to be within the hearing of the permit holder, or even within the hearing of her managing agent. The incidents were never called to the attention of the permit holder. Therefore, in our opinion, the trial court erred in finding that the commission's order was supported by substantial, reliable and probative evidence.

In view of our decision, it is not necessary to pass upon the alleged constitutional questions raised by the appellant. We do comment, however, that in our opinion the commission has no authority to pass on the constitutionality of a statute. Accordingly, a party need not raise such a question before the commission in order to be entitled to present it in the judicial forum of the Common Pleas Court.

The judgment of the Common Pleas Court affirming the order of the Board of Liquor Control is reversed and vacated.

*Judgment reversed.*

DUFFY, P. J., and TROOP, J., concur.