THE STATE, EX REL. BROOKPARK ENTERTAINMENT, INC., D.B.A. CRAZY HORSE SALOON, v. CUYAHOGA COUNTY BOARD OF ELECTIONS ET AL.

[Cite as State, ex rel. Brookpark Entertainment, Inc., v. Cuyahoga Cty. Bd. of Elections (1991), 60 Ohio St. 3d 44.]

(No. 90-2255—Submitted January 22, 1991—Decided May 29, 1991.)

*Jennifer L. Brunner* and *Thomas P. Michael,* for relator.

*Stephanie Tubbs Jones,* prosecuting attorney, and *Michael Butler,* for respondent board of elections.

*Lee I. Fisher,* attorney general, *Catherine M. Cola* and *Cherry Lynne Poteet,* for respondent Secretary of State.

*Lee I. Fisher,* attorney general, and *Chester T. Lyman,* for respondent Director of Liquor Control.

*Per Curiam.* Three conditions must be satisfied before a writ of prohibition will issue: (1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is unauthorized by law, and (3) refusal of the writ will cause injury for which no adequate remedy in the ordinary cause of law exists. *State, ex rel. Racing Guild of Ohio,* v. *Morgan* (1985), 17 Ohio St. 3d 54, 17 OBR 45, 476 N.E. 2d 1060. A writ of mandamus will issue where the relator demonstrates that he is entitled to respondent's performance of a clear legal duty and that he has no adequate

remedy in the ordinary course of law. *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. For the following reasons, we hold that Brookpark has failed to satisfy both of these tests.

### Prohibition

Brookpark contends that the respondents are all about to exercise quasi-judicial authority. "Quasi-judicial authority" has been defined as " ' * * * the power to hear and to determine controversies between the public and individuals which require a hearing resembling a judicial trial * * * . ' " *State, ex rel. Hensley,* v. *Nowak* (1990), 52 Ohio St. 3d 98, 99, 556 N.E. 2d 171, 173, quoting *State, ex rel. Methodist Book Concern,* v. *Guckenberger* (1937), 57 Ohio App. 13, 16-17, 9 O.O. 30, 31, 11 N.E. 2d 277, 279, affirmed (1937), 133 Ohio St. 27, 9 O.O. 432, 10 N.E. 2d 1001.

Canvassing and certifying election results, notifying appropriate authorities about these results, and physically picking up liquor permits do not involve hearings and do not require respondents to settle controversies of any kind. See *State, ex rel. O'Grady,* v. *Brown* (1976), 48 Ohio St. 2d 17, 2 O.O. 3d 94, 356 N.E. 2d 296; *State, ex rel. Glass,* v. *Brown* (1977), 52 Ohio St. 2d 7, 6 O.O. 3d 76, 368 N.E. 2d 837 (writs of prohibition to prevent Secretary of State from placing matters on ballot denied because no quasi-judicial authority at issue). Cf. *Barton* v. *Butler Cty. Bd. of Elections* (1988), 39 Ohio St. 3d 291, 530 N.E. 2d 871 (election officials exercise quasi-judicial authority in determining the sufficiency of referendum petitions). Brookpark, therefore, has failed to show the first prerequisite for a writ of prohibition to issue.

Brookpark next argues that by declaring the local option election un-timely, the district court's decision establishes that the election was void, and, therefore, that respondents have no authority to determine and act on the election results. Relying on the doctrines of *res judicata,* collateral estoppel, and estoppel by judgment, Brookpark maintains that the parties in this case are bound by the district court's judgment. We disagree.

*Res judicata* refers to the principle that:

"A final judgment or decree rendered upon the merits, without fraud or collusion, *by a court of competent jurisdiction,* is conclusive of the rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. * * * ." (Emphasis added.) *Whitehead* v. *Gen. Tel. Co.* (1969), 20 Ohio St. 2d 108, 49 O.O. 2d 435, 254 N.E. 2d 10, paragraph one of the syllabus.

Collateral estoppel, an aspect of *res judicata,* prevents a question that has been actually and necessarily determined by a court of competent jurisdiction in a first cause of action from being relitigated between the same parties or their privies in a second, different cause of action. *Goodson* v. *McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 195, 2 OBR 732, 734, 443 N.E. 2d 978, 981.

Likewise, under the principle of estoppel by judgment:

"* * * [T]he final adjudication of a material issue by a court of competent jurisdiction binds the parties in any subsequent proceeding between or among them, irrespective of a difference in forms or causes of action. * * *" *State, ex rel. Ohio Water Serv. Co.,* v. *Mahoning Valley Sanitary Dist.* (1959), 169 Ohio St. 31, 8 O.O. 2d 1, 157 N.E. 2d 116, paragraph two of the syllabus. Accord *Kelly* v. *Georgia-*

*Pacific Corp.* (1989), 46 Ohio St. 3d 134, 137, 545 N.E. 2d 1244, 1248. But, see, *Krahn* v. *Kinney* (1989), 43 Ohio St. 3d 103, 107, 538 N.E. 2d 1058, 1062 (estoppel by judgment does not apply where the causes of action are not the same).

Each of these doctrines requires a judgment by a court of competent jurisdiction for its preclusive effect to apply. Here, however, the district court specifically held that it lacked subject matter jurisdiction, and, for that reason, it dismissed Brookpark's case. Thus, even though the district court had first discussed how R.C. 4301.321 and 4301.331 apply to the instant local option election and went on to discuss Brookpark's constitutional arguments, the court's judgment is not conclusive of these matters. Accordingly, we hold that neither the district court's factual findings nor its conclusions of law are binding as between these parties.

Brookpark also urges us to consider the district court's decision as persuasive authority. We, however, are unable to accept that court's reading of Ohio local option law or its finding that Brookpark's violation "occurred," for the purpose of this law, on October 1, 1989.

The district court read R.C. 4301.321 to require an election within one year of a permit holder's violation of liquor control law. The time limit in R.C. 4301.321, however, is keyed to the date on which the liquor control commission *finds* the violation, not the date on which the violation *occurs*. The statute stated, in pertinent part:

"The electors of an election precinct may exercise the privilege of local option * * * if the holder of the permit has been found by the liquor control commission to have violated any provision of this chapter * * * of the Revised Code within one year prior to the election." Am. S.B. No. 481, Ohio Leg. Serv. (1989) 5-171, 5-172.

Indeed, contrary to the district court's decision, it is R.C. 4301.331, not R.C. 4301.321, that is keyed to the date on which a violation occurs. Establishing a time limit for the petitions that initiate the local option process, R.C. 4301.331 provided, in pertinent part:

"* * * Such a petition is valid only if the violation of a provision of Chapter 4301. * * * of the Revised Code occurred within one year prior to the date on which the petition is presented to the board of elections. * * *" H.B. No. 562, 142 Ohio Laws, Part II, 4332, 4342.

Furthermore, the material evidence in this case is not in dispute, and none of it supports the district court's conclusion that Brookpark committed its violation on October 1, 1989. Instead, the record plainly establishes that the commission found Brookpark in violation of liquor control law based on an act that took place on August 7, 1989. Accordingly, we specifically find that Brookpark's violation occurred on August 7, 1989.[1]

Having made this finding, we now

---

[1] The Secretary of State asserts that the district court had only a limited record before it, and this may explain why the court did not determine that October 1, 1989 was the day before the commission mailed its notice of hearing.

The Secretary of State also urges us to find that Brookpark's violation occurred, for the purpose of R.C. 4301.331, on November 16, 1989, the date on which the Liquor Control Commission's order was mailed. To do so would ignore that, as a practical matter, the date of an illegal act depends on when the act itself occurred, not when a judicial or quasi-judicial finding of illegality is released. We see nothing in the statute that warrants the result urged by the Secretary of State.

apply R.C. 4301.331. To be timely under the statute, the instant local option petitions had to be filed within one year after Brookpark's August 7, 1989 violation, or by August 7, 1990. The petitions, however, were not filed until August 23, 1990. Thus, while the district court considered these petitions timely, we hold that the petitions were not filed within the time limit prescribed by R.C. 4301.331.

To apply R.C. 4301.321, we must first determine when the liquor control commission "found" Brookpark's violation. Brookpark argues that the commission made this finding on October 24, 1989 (the day of the commission hearing) and, therefore, that the election was untimely under R.C. 4301.321 because it was held more than one year later. Some respondents argue that the commission made its finding on November 16, 1989 (the day the commission's order was mailed), and, therefore, that the election was timely under the statute because it was held less than one year later.

We agree with respondents because, under R.C. 119.12, the period for appealing liquor control commission orders starts to run on the date the commission's order is mailed. This means that mailing is the effective date when the commission both issues its decision and "finds" a violation. Moreover, while Brookpark points out that the commissioners "mark[ed] their individual docket sheets" at the end of the hearing, we see no evidence that the commissioners' decision was announced and final at that time. Therefore, we reject Brookpark's argument that the commission "found" Brookpark's violation after the hearing on October 24, 1989.

Similarly, we cannot accept October 24, 1989 as the date of the commission's finding just because that date appears on the Liquor Control Commission's appearance docket, and November 16, 1989 does not. Arguing that the commission, like a court, speaks only through its journal, Brookpark relies on *Wittenberg* v. *Bd. of Liquor Control* (App. 1948), 52 Ohio Law Abs. 65, 67, 80 N.E. 2d 711, 714, in which the court said that the board spoke "only through its entries spread upon the record." Contrary to Brookpark's argument, however, the court was not referring to a journal entry when it made this statement; it was instead chastising the board for not making *any* record of its decision to dismiss a complaint. *Wittenberg* does not apply here because the Liquor Control Commission documented its decision in the underlying case.

Accordingly, we also specifically find that November 16, 1989 was the day on which the commission found Brookpark in violation of Ohio law. Having done so, we apply R.C. 4301.321 and hold, contrary to the district court's conclusion, that the local option election of November 6, 1990 was timely and valid. Thus, Brookpark has also failed to show that respondents have no legal authority to determine and act on the results of this election.

In light of our holdings that the local option election was timely, but that the petitions were not, Brookpark's argument that it has no adequate remedy in the ordinary course of law is easily dismissed. R.C. 4301.331 expressly allows permit holders to protest the validity of petitions filed pursuant to the statute. It provides, in pertinent part:

"An elector who is eligible to vote on * * * [a local option question] *or the permit holder named on the petition may * * * file a protest against a local option petition.* The petition shall be in writing and shall be filed with the election officials with whom the petition

was filed. * * * At the time and place fixed [by the election officials], the election officials shall hear the protest and determine the *validity* of the petition." (Emphasis added.)

R.C. 4301.331 does not define the term "validity," but the statute read as a whole indicates that timeliness is one factor to be considered. Thus, Brookpark could have protested the petitions at bar because they were filed beyond the deadline in R.C. 4301.331. Accordingly, Brookpark has failed to establish the absence of an adequate remedy, as well.

### Mandamus

We turn now to Brookpark's claim for a writ of mandamus ordering the Secretary of State and board of elections to impound the uncertified local option election results and ordering the Director of Liquor Control to disregard any notice about these results. Brookpark maintains that these acts are discretionary and, building on its argument that the election was untimely, that respondents will abuse their discretion by carrying out these acts. We disagree.

As a general matter, respondents have statutory duties, not discretion, to determine and act on election results, see, *e.g.,* R.C. 3501.11(L), 3505.30, and 4301.362, and we have already said that this election was timely. Thus, Brookpark has given us no reason to conclude that respondents are obligated to perform as requested, or that Brookpark is entitled to this. Moreover, in light of the protest al-

lowed by R.C. 4301.331, Brookpark has also failed to show the absence of an adequate remedy.

Furthermore, mandamus lies to compel the performance of a clear legal duty; it is not to be used in lieu of a prohibitory injunction. *Assn. for the Defense of the Washington Local School Dist.* v. *Kiger* (1989), 42 Ohio St. 3d 116, 537 N.E. 2d 1292. Here, Brookpark's mandamus action is, in effect, the mirror image of its claim for a writ of prohibition, which tells us that Brookpark's purpose is not to compel, but to prevent respondents from determining and acting on these election results. This court has no original jurisdiction in injunction. *State, ex rel. Stamps,* v. *Automatic Data Processing Bd. of Montgomery Cty.* (1989), 42 Ohio St. 3d 164, 166, 538 N.E. 2d 105, 108. Thus, we cannot grant a writ of mandamus for this reason also.

Based on the foregoing, we hold that Brookpark has fulfilled none of the conditions necessary for writs of prohibition or mandamus to issue. We, therefore, deny the writs. Moreover, because the material facts are not in dispute and the board of elections is entitled to judgment as a matter of law, we also grant the board's motion for summary judgment.

*Motion granted and writs denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.