Stephenson, J.
 

 This is a taxpayer’s action in mandamus originating in the Court of Appeals of Cuyahoga County, Ohio, wherein it was sought to compel Harry L. Davis, as Mayor of the city of Cleveland, Louis C. West, as Director of Finance, Russell Y. Johnson, as Treasurer, and F. E. McKee, as Commissioner of Accounts of the city, to issue a voucher and check for the payment of $1,250,000, claimed to be owing by the city to the Treasury Investment Account.
 

 The Court of Appeals found in favor of the relator and awarded a writ of mandamus as prayed for. Error is prosecuted to this court to reverse the judgment of the Court of Appeals of Cuyahoga county, Ohio.
 

 It is conceded that whatever there is of law in this case must be found in the following sections of the General Code of Ohio and of the Charter and Code of the city of Cleveland:
 

 Section 4514, General Code: “The trustees of the sinking fund shall invest all moneys received by them in bonds of the United States, the State of Ohio, or of any municipal corporation, school, township or county bonds, in such state, and hold in reserve only such sums as may be needed for effecting the terms of this
 
 *415
 
 title. All interest received by them shall be re-invested in like manner.”
 

 Section 2293-4, General Code: “In anticipation of the collection of current revenues in and for any fiscal year, the taxing authority of any subdivision may borrow money and issue notes therefor, but the aggregate of such loans shall not exceed one-half of the amount estimated to be received from the next ensuing semiannual settlement of taxes for such fiscal year as estimated by the budget commission, other than taxes to be received for the payment of debt charges, and all advances. The sums so anticipated shall be deemed appropriated for the payment of such notes at maturity. The notes shall not run for a longer period than six months and the proceeds therefrom shall be used only for the purposes for which the anticipated taxes were levied, collected and appropriated. No subdivision shall borrow money or issue certificates in anticipation of the February tax settlement before January first of the year of such tax settlement.”
 

 Section 4296-1, General Code: “The council or other legislative authority of any city may by ordinance provide that whenever there are moneys in the treasury of such city which will not be required to be used by such city for a period of six months or more, such moneys may in lieu of being deposited in a bank or banks be invested in obligations of such city in the manner prescribed in the next succeeding three sections hereof. * * * ”
 

 Section 4296-2, General Code: “Whenever any obligations of a city, the council or other legislative body of which has passed an ordinance as authorized by section 4296-1 hereof, are to be sold, and the same are not taken by the sinking fund commission, or when such obligations are otherwise available for purchase by such city, the auditor or other chief fiscal officer shall submit to the mayor, or to the chief executive officer if the mayor be not such, and to the chief law
 
 *416
 
 officer of such city, a statement of moneys in the treasury or in the process of collection, and a schedule showing the probable requirements of money for the use of the city for such period not less than six months as the aforesaid ordinance or the chief executive officer shall direct, together with a recommendation as to whether any moneys in the treasury should be invested in such obligations. The mayor or other chief executive officer, the chief law officer, and the auditor or other chief fiscal officer may thereupon order such investments of moneys in the treasury in such obligations, at not more than par and accrued interest, as they may deem advisable in the interest of the city. It shall not be necessary to advertise such bonds before such investment is made. No investment shall be made except in obligations which have been passed upon and approved as to validity by a reputable firm of bond attorneys. Whenever it is necessary to convert any such investment into cash, it shall be done by first offering the obligations held by the city to the sinking fund commission, and if the sinking fund commission decline to take the same or any part thereof, then such remaining obligations shall be sold in any manner authorized by law for the sale of investments by the sinking fund; provided, that no such obligations shall be sold for less than par and accrued interest.”
 

 Section 4296-3, General Code: “The chief accounting officer of such city shall maintain an account to be known as the ‘treasury investment account’ in which he shall enter all transactions relating to the investment of treasury funds, as provided in sections 4296-1 and 4296-2. He shall also maintain a record and furnish to the treasurer a duplicate of all items entered thereon, showing all bonds or other securities purchased or sold for the account of the treasury, with the number, maturity, date, and interest rate of each. He shall also keep a record of the number and maturity of interest coupons, and whenever any such securities or
 
 *417
 
 interest coupons are due shall issue his order for the collection of the same,-in the same manner as other receipts are collected.”
 

 Section 110, Cleveland Municipal Code: “The sinking fund commission shall invest, subject to the limitations of municipal code section 85-1, all moneys received by them in bonds or treasury notes of the United States; bonds of the state of Ohio; bonds or special assessment notes of any municipal corporation of Ohio; school, township or county bonds of the state of Ohio; and hold in reserve only such sums as may in the judgment of said commission be required for the payment of obligations under their supervision.”
 

 Section 87, Cleveland Municipal Code: “All public moneys coming into the hands of the city treasurer, as city treasurer of the city of Cleveland from whatever source, shall be deposited by the city treasurer as hereinafter provided, in such banks as are designated in the manner herein provided as the depositaries of such money, provided, however, that the city treasurer may retain in his office or in such other offices of the city as the same may be necessary, such amounts of public money, not exceeding sixty thousand dollars ($60,000.00), as may be required to be used in the transaction of the daily business of the city in such offices, provided, however, that all such moneys belonging to the city of Cleveland which at any time will not be required to be used by the city for a period of six months may in lieu of being deposited as herein required be invested in obligations of the city of Cleveland. ’ ’
 

 Section 87-A, Cleveland Municipal Code: “Whenever any obligations of the city of Cleveland are to be sold, and the same are not taken by the sinking fund commission, or when such obligations are otherwise available for purchase by the city, the director of finance shall submit to the city manager and the director of law a statement of moneys in the treasury or in the
 
 *418
 
 process of collection, and a schedule showing probable requirements of money for the operation of the city for such period not less than six months as the city manager may direct, together with a recommendation as to whether any moneys in the treasury should be invested in such obligations. The manager, the director of law, and the director of finance may thereupon order such investments of moneys in the treasury, at not more than par and accrued interest, as they may deem advisable in the interests of the city. Whenever it is necessary to convert any such investment into cash, it shall be done by selling the obligations held by the city to the sinking fund commission, or if the sinking fund commission decline to take the same or any part thereof, then such remaining obligations shall be sold in the manner authorized in section 87-D hereof or in any other manner authorized by law.”
 

 Section 87-B, Cleveland Municipal Code: “The commissioner of accounts shall maintain an account to be known as the ‘Treasury Investment Account’ in which he shall enter all transactions relating to the investment of treasury funds, as provided in the preceding section. He shall also maintain a record and furnish to the treasurer a duplicate of all items entered thereon, showing all bonds or other securities purchased or sold for the account of the treasury, with the number, maturity date, and interest rate of each. He shall also keep a record of the number' and maturities of interest coupons, and whenever any such securities or interest coupons are due shall issue his order for the collection of the same, in the- same manner as other receipts of the city are collected.”
 

 Section 41 of the city Charter: “Upon the written recommendation of the mayor, the council may at any time transfer an unencumbered balance of an appropriation made for the use of one department, division or purpose to any other department, division or purpose; but no such transfer shall be made of rev
 
 *419
 
 enues or earnings of any non-tax supported public utility to any other purpose.”
 

 The Court of Appeals encountered little or no trouble in determining that the relator was entitled to the writ of mandamus and the writ was allowed as prayed for. We cannot arrive at a conclusion so readily. This is a momentous question. Taking a million and a quarter dollars out of the general operating fund of the city of Cleveland is a rather serious proposition in so far as the*city is concerned. It can be insisted with an equal degree of force that it is likewise a serious matter with the Treasury Investment Account, from the fact that, unless it collects, it will be short a million and a quarter dollars. Gravity cannot be permitted to determine any case, but it may operate as a whip to drive the court into the realm of most serious consideration if and when the case resolves itself into an appeal to the court to exercise its discretion.
 

 The current revenue note that was purchased by the Sinking Fund Commission of the city of Cleveland on January 28, 1932, furnished the ground-work for this action. The city had authority to issue the note by virtue of Section 2293-4, General Code, and the Sinking Fund Commission had authority to buy it under virtue of Section 2293-27, General Code. This note was paid June 22, 1932, and the reference to this transaction is purely historical, except that it does reflect upon the geniality of the trustees of the Sinking Fund. On June 30, 1932, General Funds 1 to 99 reveal an overdraft of approximately $1,700,000. This overdraft was in all probability caused by the payment of the note to the Sinking Fund, plus payments for operating expenses.
 

 On August 13, 1932, a current revenue note for $1,-250,000 was issued by the city to the Treasury Investment Account of the city. Upon examination it will be found that this note is a promissory note pure and
 
 *420
 
 simple. True, it has some of the earmarks of a bond. The credit of the city is pledged to its payment, the necessary legislation was enacted and the validity of this and the renewal notes was passed upon and approved by a reputable firm of bond attorneys. Of course this firm of lawyers had a right to assume that the money secured would be expended as provided by law, and that it would likewise be paid, as provided by law. The Treasury Investment Account is not a fund. As its name indicátes, it is just an account. It is an account of funds having unexpended' balances. This account has no money. It is nothing more nor less than a bookkeeping feature of the city’s business, True, it has some legal sanction. It has just so much life as the law gives it — no more.
 

 We are dealing with promissory notes in this case. Let us examine these notes. They are exactly alike except as to dates. Leaving off the heading, they read as follows:
 

 “The City of Cleveland, Ohio, hereby acknowledges itself bound and indebted to the bearer, in the sum of Five Hundred Thousand Dollars which sum it promises to pay at the office of the City Treasurer in the City of Cleveland, on or before the first day of July, 1932, with interest thereon at the rate of six (6) per centum per annum.
 

 “This note is one of a series of three notes, aggregating One Million Five Hundred Thousand Dollars ($1,500,000.00), being part of an authorized issue not exceeding Two Million Three Hundred and Fifty Thousand Dollars ($2,350,000.00), issued for the purpose of providing for the payment of the current expenses and obligations of the city of Cleveland during the first half of the year 1932, in anticipation of the collection of current revenues to be received from the February semi-annual settlement of taxes for the fiscal year 1932, under authority of The Uniform Bond Act, particularly Section 2293-4 of the General Code of
 
 *421
 
 Ohio and Ordinance No. 96723 of the council of the city of Cleveland, passed January 4th, 1932, as amended by Ordinance No. 96849, passed January 18, 1932.
 

 “It is Hereby Certified, that all the proceedings for the issuance of this note have been had in due form as required by law, and that all the requirements of law essential to the validity thereof have been duly complied with, and that the aggregate series of notes of which this note is one, do not exceed any debt or other limit prescribed by law or the vote of the City, and that the taxes so anticipated have been appropriated for the payment of said notes at maturity. The faith and credit of the City of Cleveland are hereby pledged for the payment of the principal and interest thereof at maturity.
 

 “In Testimony Whereof, the City of Cleveland has caused this note to be executed, its corporate seal to be hereto affixed, and these presents to be signed by its Mayor and Director of Finance, as of the 28th day of January, A. D. 1932.”
 

 These notes were duly signed by the Acting Mayor and Director of Finance.
 

 A careful reading strengthens the contention that these instruments were promissory notes. They were authorized by law, it is true, but the limitations in the statute authorizing their issue surround them with many restrictions. The law states that the taxing authority of any subdivision may borrow money and issue notes therefor in anticipation of the collection of current revenues in and for any fiscal year, but the aggregate of such loans shall not exceed one-half the amount estimated to be received from the next semiannual settlement of taxes for such fiscal year, as estimated by the budget commission, other than taxes to be received for debt charges and all advances. The sums so anticipated shall be deemed appropriated for the payment of such notes at maturity. The notes
 
 *422
 
 shall not run for a longer period than six months, and the proceeds therefrom shall be used only for the purposes for which the anticipated taxes were levied, collected and appropriated. No subdivision shall borrow money or issue certificates in anticipation of the February tax settlement before January first of the year of such tax' settlement.
 

 Just what is the Treasury Investment Account? The law provides that, such an account shall be kept by the chief accounting officer of the city, and in it “he shall enter all transactions relating to the investment of treasury funds * * *. He shall also maintain a record and furnish to the treasurer a duplicate of all items entered thereon, showing all bonds or other securities purchased or sold for the account of the treasury, with the number, maturity, date, and interest rate of each. He shall also keep a record of the number and maturity of interest coupons,
 
 and whenever any such securities or interest coupons are due shall issue his order for the collection of the
 
 same,
 
 in the same manner as other receipts are collected.”
 
 (Section 4296-3, General Code. Italics ours.) Under the authority of the ordinance, the proper officers of the city sign the notes and forget about them, as their duty has been performed. At the next semi-annual settlement the County Auditor distributes to the city its share of taxes and
 
 eo instante
 
 there is appropriated as a matter of law so much of the city’s taxes as are necessary to retire its obligations issued in anticipation of such tax collection. Then it is that the duty of the financial officer to collect is fastened upon him. If he does not proceed to collect, the appropriated moneys are expended by the city, and the appropriation as a matter of law is lost. This appropriation might last until the next succeeding semi-annual settlement if not applied to the liquidation of the obligation for which it was made as a matter of law — or otherwise expended — but after the next succeeding semi-annual settlement, it is
 
 *423
 
 gone forever. There is no authority of law for its resurrection or substitution.
 

 The last of these notes was given January 24, 1934. It had to be retired at the February 1934 semi-annual settlement, as the appropriation as a matter of law was then made for that purpose. It was not retired. The August 1934 settlement passed and it was not retired. On October 1, 1934, more than eight months after the note should have been retired, the original petition in this case was filed, and the petition was just that much too late. We do not apply the doctrine of laches in this case at all. When we say the action was brought too late, we simply mean that the only duty enjoined by law that could be invoked to bring about the payment of the note in question, ere the petition was filed, had passed into innocuous desuetude. Herein lies the only act which the law specially enjoins as a duty resulting from an office, trust or' station in connection with the collection of the notes herein involved.
 

 Can a court issue a writ of mandamus against the officers named herein to pay the amount represented by these notes when the law has imposed the collection upon a particular individual? It is not disputed in the record herein that all the cash of the city of Cleveland is commingled and deposited in various depositaries. This cash includes revenues from non-tax supported utilities which could not under any circumstance be transferred to any other fund. The cash position of the city was in no wise changed by reason of the execution of the revenue notes involved herein and their alleged purchase by the Treasury Investment Account. The whole series of acts relative to these notes amounts in its finality to a switching of credits. An original note was given and it was renewed from time to time, and there was no exchange of cash which could have been used for the general fund of the city or the current operating expenses of the city during the term of any of the notes. This fact at least gives
 
 *424
 
 some color to the claim of the city that no consideration passed for any of these notes.
 

 From the time the first note was issued to the Treasury Investment Account it is not revealed on the books of the city that the notes were in any wise connected with the general funds numbered 1 to 99, or with the city’s operating funds numbered 1 to 125, but that the vouchers and receiving warrants were made payable to and distributed from Fund 126, identified as “Miscellaneous Funds,” which, so far as the record discloses, is in no wise connected with the city’s operating funds or general fund. If, as is claimed, these notes were executed and listed as securities of the Treasury Investment Account for the sole and only purpose of keeping a paper balance, then there would, as contended, be no obligation on the part of the general fund to make restoration.
 

 In fact, the Treasury Investment Account as such could not lend money because there is not, nor has there ever been, any money in the city treasury to its credit. It is merely authorized to group unexpended balances from other funds under the heading, “Treasury Investment Account,” and in accordance with law it carries a record as to when and how these unexpended balances are invested.
 

 It would seem that there was but one course for the fiscal officers of the city of Cleveland to follow, and that was the course blazed by the law. These notes could be issued within the limitations provided by law. They could not run beyond the next semi-annual settlement. "When the next semi-annual settlement was made, an appropriation sufficient to retire the notes was made from the collection as a matter of law and it was then and there the duty of the chief accounting officer of the city, who under the charter was the Commissioner of Accounts, to forthwith, when the obligations became due, collect same from the proceeds of
 
 *425
 
 the semi-annual settlement that were appropriated as a matter of law to their payment.
 

 The relator prays the court to require respondents to issue a voucher and check for the amount represented by the note. Against what fund should the voucher be drawn? No appropriation for such payment has been made. True, there was an appropriation made at one time as a matter of law, but that is mere history now.
 

 We fail to find wherein the plaintiffs in error or any of them are impressed with legal duty in relation to the obligation herein involved. A court can no more create a legal duty than can the humblest citizen. Creating a legal duty is the function of the legislative branch of the government. The most that a court can do is to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station when a clear right to such performance is presented.
 

 We find no clear right in this case. The judgment of the Court of Appeals is reversed and relator’s petition in mandamus is dismissed at his cost.
 

 Judgment reversed.
 

 Williams, Matthias and Day, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.
 

 Jones, J., not participating.