[THE STATE, EX REL.] CHEVALIER ET AL., *v.* BROWN, SECY. OF STATE, ET AL.

[Cite as Chevalier *v.* Brown (1985), 17 Ohio St. 3d 61.]

(No. 85-402—Decided April 16, 1985.)

Lynett M. McGough, for relators.

Anthony J. Celebrezze, Jr., attorney general, and John T. Williams, for respondent Secretary of State.

Gregory A. White, prosecuting attorney, and John S. Keressi, Jr., for respondent board of elections.

Provenza & Provenza and Russell D. Provenza, for respondent Andew F. DeAngelis.

Anthony B. Giardini, for respondent Alex M. Olejko.

Roy Nichols, for respondent Woodrow W. Mathna.

Peter Towers, pro se.

Per Curiam. The city of Lorain is a non-charter city and is governed by the Ohio Revised Code provisions concerning municipal elections. R.C. 733.08 sets forth the procedure to be followed when a vacancy in the office of mayor is created. Effective July 26, 1984, it was amended to provide:

"In case of the death, resignation, or removal of the mayor, the president of the legislative authority of the city shall become the mayor, and shall hold the office for the unexpired term. * * *" (Emphasis added.) Prior to the July 1984 amendment, R.C. 733.08 authorized an election to fill the balance of an unexpired mayoral term. Apparently none of the parties to these proceedings was aware of the amendment effective July 26, 1984, until the Secretary of State discovered his error on March 7, 1985.

Mandamus may issue only where the relator establishes "(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of law. State, ex rel. Berger, v. McMonagle (1983), 6 Ohio St. 3d 28, 29." Eudela v. Rogers (1984), 9 Ohio St. 3d 159, 161.

No statute exists which imposes a duty upon respondent election officials to hold an election for mayor, or to accept late petitions for council seats. In fact, to do so would be contrary to statute. R.C. 733.08; 3513.05. Mandamus does not lie to "* * * compel an officer to do an act which he has no legal right to do in the absence of the writ." State, ex rel. Hildebrandt, v. Stewart (1904), 71 Ohio St. 55, 73.

Despite the recent amendment to R.C. 733.08 which does not authorize any election, relators claim entitlement to relief on two grounds. First, relator Chevalier essentially argues that he is entitled to the relief sought on grounds of estoppel. He claims that he and other proposed

nominees for mayor relied to their detriment on the statements and actions of the board of elections and the Secretary of State's office in advising that an election would be held and in accepting petitions. It is unfortunate that relator and others relied to their detriment upon the erroneous statements and actions of the board of elections and the Secretary of State. However, "* * * the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." (Citations omitted.) *Besl Corp.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 146, 150 [74 O.O.2d 262].

Specifically, we held in *State, ex rel. Svete,* v. *Bd. of Elections* (1965), 4 Ohio St. 2d 16, 18 [33 O.O.2d 139] that "[m]istaken advise [*sic*] or opinion of an agent of a governmental body as to the validity of an instrument does not create an estoppel against a public official to declare the instrument invalid." In that case the relator had relied on the statements of a board of elections clerk that relator's nominating petitions appeared in good order, when, in fact, they were not. Similarly, in *State, ex rel. Jedlicka,* v. *Bd. of Elections* (1969), 20 Ohio St. 2d 13 [49 O.O.2d 108], paragraph one of the syllabus, we held that "[t]he failure of a Board of Elections to perform its obligation under Section 3517.11, Revised Code, to notify a candidate for public office of his duty to file a statement of receipts and expenses imposed by Section 3517.10, Revised Code, does not excuse a candidate's failure to perform that duty."

These holdings are consistent with the long-established policy that Ohio's election statutes are mandatory and must be strictly complied with by candidates as well as election officials. *State, ex rel. Senn,* v. *Bd. of Elections* (1977), 51 Ohio St. 2d 173, 174 [5 O.O.3d 381]; *State, ex rel. Griffin,* v. *Krumholtz* (1982), 70 Ohio St. 2d 125, 127 [24 O.O.3d 234]; *State, ex rel. Schmelzer,* v. *Bd. of Elections* (1982), 2 Ohio St. 3d 1, 2. Although respondent election officials were remiss in their duties, that failure cannot now justify an equal omission on the part of candidates.

Relator Hartman argues that applying R.C. 733.08 as amended July 26, 1984 in this case is an unconstitutionally retroactive application of the law because the mayoral term commenced prior to the date of the amendment. Relator asserts that when she cast her ballot in the 1983 municipal election she relied on R.C. 733.08 as it then existed to provide for an election in the event of a vacancy in the mayoral office.

A retroactive law is one which " ' "* * * takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, *in respect to transactions or considerations already past * * *.*" ' " (Emphasis added.) *Herrick* v. *Lindley* (1979), 59 Ohio St. 2d 22, 25 [13 O.O.3d 13]. The "transaction" which invokes the application of R.C. 733.08 is not the original election to the term, but the vacancy. See *Herrick* v. *Lindley, supra; National Mut. Ins. Co.* v. *Whitmer* (1982), 70 Ohio St. 2d 149, 152-153 [24 O.O.3d 248]. Here,

the vacancy occurred over five months after the effective date of the amendment, and, thus, R.C. 733.08 was not retroactively applied.

For the foregoing reasons, the writ is denied.

*Writ denied.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., not participating.