The STATE ex rel. DONEGAN

v.

CUYAHOGA COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Donegan v. Cuyahoga Cty. Bd. of Elections* (2000), 136 Ohio App.3d 589.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77575.

Decided Feb. 10, 2000.

590

591

_Allan & Gallagher_ and _Sean P. Allan,_ for relator.

_William D. Mason,_ Cuyahoga County Prosecuting Attorney, and _Reno J. Oradini,_ Assistant Prosecuting Attorney, for respondent.

PATRICIA ANN BLACKMON, Judge.

On February 2, 2000, Ann Marie Donegan, relator, filed a petition for a writ of mandamus to compel respondent, the Cuyahoga County Board of Elections ("board"), to remove her name from the ballot in the upcoming March 7 primary election. This court granted relator's application for an alternative writ on February 3, thereby prohibiting the dissemination of absentee ballots, and ordered an abbreviated briefing schedule pursuant to Loc.App.R. 45(B)(6). On February 7, the board filed a motion for summary judgment, and on February 8, relator filed a brief in opposition to respondent's motion and a cross-motion for summary judgment. For the reasons that follow, we grant respondent's motion for summary judgment and deny relator's cross-motion for summary judgment.

On January 7, 2000, relator filed a declaration of candidacy and petition for the Democratic seat of State Senate District 24. On January 13 or 14, relator verbally notified Tom George, an administrative assistant of the board, that she was considering withdrawing as a candidate and sought advice as to when and how. George conveyed that she had until January 21, 2000, prior to the meeting of the board, to submit a formal written request to withdraw. On the evening of January 20, relator sent a written request to withdraw via facsimile copy to William Wilkins, the director of the board of elections. The next day, relator was notified that her request to withdraw was denied as untimely filed pursuant to R.C. 3513.30, which required a withdrawal on or before January 18, 2000.

On January 21, 2000, respondent approved the absentee ballot pages. On January 29 and 30, Dayton Legal Blank, Inc. printed and assembled the ballots, and on February 3, 2000, Dayton delivered the ballots to respondent. On January 31, 2000, the Democratic ballot pages for voting devices were printed.

Relator immediately requested an appeal of the rejection of her withdrawal and, on February 1, 2000, the board heard relator's appeal and voted three to one to reject relator's withdrawal as untimely regardless of the fact that relator verbally notified respondent of her consideration to withdraw on January 18, 2000. The next day, on February 2, relator filed her petition for a writ of mandamus to compel the board of elections to remove her name from the ballot.

Mandamus is defined as "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. A court cannot create the legal duty sought to be compelled through a mandamus proceeding; the creation of such a duty is the distinct function of the legislative branch of the government. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 591 N.E.2d 1186; *Davis v. State ex rel.*

*Pecsok* (1936), 130 Ohio St. 411, 5 O.O. 20, 200 N.E. 181, paragraph one of the syllabus.

 In order to grant relator a writ of mandamus, this court must find that the relator has a clear legal right to the relief requested, that the respondent is under a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law. *State ex rel. Rogers v. Taft* (1992), 64 Ohio St.3d 193, 594 N.E.2d 576; *State ex rel. Hodges,* 64 Ohio St.3d at 3, 591 N.E.2d at 1188–1189; *State ex rel. Klein v. Cuyahoga Cty. Bd. of Elections* (1995), 102 Ohio App.3d 124, 656 N.E.2d 1031. The writ is to be issued with great caution and only when the way is clear. *State ex rel. Taylor v. Glasser* (1977), 50 Ohio St.2d 165, 4 O.O.3d 367, 364 N.E.2d 1. The writ may not be issued to compel the observance of laws in general, but only to command the performance of a specific act specially enjoined by law to be performed. *State ex rel. Stanley v. Cook* (1946), 146 Ohio St. 348, 32 O.O. 419, 66 N.E.2d 207, paragraph seven of the syllabus. Mandamus also may not be used to compel the performance of a permissive act. *State ex rel. Hodges,* 64 Ohio St.3d at 4, 591 N.E.2d at 1189.

 When adjudicating an extraordinary writ action in an election matter involving the review of a decision of a board of elections, the writ of mandamus may be issued if it is determined that the board engaged in fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal provisions. *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections* (1994), 70 Ohio St.3d 413, 639 N.E.2d 78; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 598 N.E.2d 1152; *State ex rel. O'Donnell v. Cuyahoga Cty. Bd. of Elections* (2000), 136 Ohio App.3d 584, 737 N.E.2d 541. An abuse of discretion connotes an attitude that is unreasonable, arbitrary, or unconscionable. *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 686 N.E.2d 238.

Relator contends that the board abused its discretion when it decided not to remove her name from the primary ballot because (1) she made it clear to the board prior to the fiftieth day before the primary that she wanted to withdraw; (2) she followed the directions of a representative of the board so that the board should be estopped from denying her withdrawal; and (3) the board ignored Secretary of State directives regarding untimely withdrawals.

The withdrawal of a candidate prior to a primary election is governed by R.C. 3513.30, which provides:

"(B) Any person filing a declaration of candidacy may withdraw as such candidate at any time prior to the primary election, or, if the primary election is a presidential primary election, at any time prior to the fiftieth day before the presidential primary election. The withdrawal shall be effected and the state-

ment of withdrawal shall be filed in accordance with the procedures prescribed in division (D) of this section for the withdrawal of persons nominated in a primary election or by nominating petition.

" * * *

"(D) Any person nominated in a primary election or by nominating petition as a candidate for election at the next general election may withdraw as such candidate at any time prior to the general election. Such withdrawal may be effected by the filing of a written statement by such candidate announcing the candidate's withdrawal and requesting that the candidate's name not be printed on the ballots. If such candidate's declaration of candidacy or nominating petition was filed with the secretary of state, the candidate's statement of withdrawal shall be addressed to and filed with the secretary of state. If such candidate's declaration of candidacy or nominating petition was filed with a board of elections, the candidate's statement of withdrawal shall be addressed to, and filed with such board."

■ According to the plain language of R.C. 3513.30(B) and (D),[1] in order to withdraw prior to the primary election, relator was required to prepare a statement of withdrawal, address it to the board of elections, and file it with the board prior to the fiftieth day before the primary, since the primary this year is a presidential primary. The fiftieth day before the March 7 primary was January 17, 2000, but because January 17 was a legal holiday, relator had until January 18 to file her withdrawal with the board. See R.C. 1.14. Relator admits that she did not send, via facsimile copy, a written request to withdraw to the board until January 20. Consequently, relator's attempt to withdraw was not in compliance with the statute governing withdrawals prior to primary elections. The fact that the Board abided by the withdrawal deadline set forth in R.C. 3513.30, rather than disregarding it, does not amount to an abuse of discretion by the board in rejecting relator's statement of withdrawal as untimely. See *State ex rel. Clinard v. Greene Cty. Bd. of Elections* (1990), 51 Ohio St.3d 87, 554 N.E.2d 895. What is ironic is that relator is attempting to invoke the issuance of the extraordinary writ of mandamus against a board of elections which abided by a statute when relator herself did not. The slippery slope of "substantial compliance" proposed by relator is not the standard for the issuance of a writ of mandamus. Relator must demonstrate a clear legal right to the relief requested. *State ex rel. Rogers v. Taft* (1992), 64 Ohio St.3d 193, 594 N.E.2d 576.

---

1. Relator makes no argument concerning any ambiguity in any of the pertinent statutes, nor do we find any ambiguity in any of the language of the statutes relating to the circumstances of relator.

■ Relator contends, regardless of the requirements of the statute, that she timely expressed her intent or desire to withdraw verbally. The plain language of the statute, however, requires a written communication. The board cannot be expected to remove a name from a ballot based upon a verbal communication, nor could the board be expected to stay the procession of the ballots to the printer based upon a verbal expression of considering, wishing or intending to withdraw. If the General Assembly intended to permit oral communications of withdrawal in relator's circumstance, the General Assembly would not have required the statement of withdrawal to be "filed" with the board.

■ Relator also contends the board should be estopped from denying her withdrawal because she followed the advice of George, a representative of the board, who told her that she had until January 21 to file her withdrawal. George admits that he gave misinformation, albeit unbeknownst to him at the time he dispensed it. Notwithstanding the filing instructions of George, which were contrary to the statute governing withdrawals, the responsibility was that of the relator to learn and know the laws governing the election process. Any reliance upon mistaken advice cannot now be used to reward a candidate's lack of knowledge of election laws. *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623. Such reliance on misinformation from the board or one of its representatives will not estop the board from rejecting a withdrawal submitted contrary to the requirements of the withdrawal statute. See *State ex rel. Cooker Restaurant v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 686 N.E.2d 238; *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 186, 602 N.E.2d 631. The Supreme Court of Ohio stated that it is "the long established policy that Ohio's election statutes are mandatory and must be strictly complied with by candidates as well as election officials." *State ex rel. Chevalier,* 17 Ohio St.3d at 63, 17 OBR at 66, 477 N.E.2d at 625.[2] To hold otherwise would permit the advice of representatives of the Board or the Board itself to take precedence over the enacted law of the General Assembly.

■ Last, relator contends the board abused its discretion by not following the directives of the Secretary of State.[3] The Secretary of State has the duty to advise boards of election as to the proper methods of conducting elections, to prepare rules and instructions for the conduct of elections, and to compel the

---

**2.** Any precedential value of *Bailey v. Cuyahoga Cty. Bd. of Elections* (1959), 81 Ohio Law Abs. 579, 110 Ohio App. 543, 13 O.O.2d 352, 161 N.E.2d 243, cited by relator is dubious in light of the more recent Supreme Court of Ohio cases cited above.

**3.** The Secretary of State has not filed a motion to be made a party to this action as permitted by R.C. 3501.05(U).·

observance by election officials of the requirements of the election laws. R.C. 3501.05(B),(C),(M). The board of elections "is the supervisor of elections under the direction of the Secretary of State." *State ex rel. Donnelly v. Green* (1958), 106 Ohio App. 61, 63, 6 O.O.2d 340, 341, 148 N.E.2d 519, 521. The board has the duty to perform all duties imposed by law, R.C. 3501.11, and such other duties prescribed by law or the rules of the Secretary of State, R.C. 3501.11(P). The Attorney General has advised that the rules, regulations and instructions of the Secretary of State relating to the conduct of elections, so long as in force and effect and not superseded by higher authority, are binding upon subordinates in that violations may constitute grounds for removal, and that it is within the authority of the Secretary of State to adopt such rules, regulations and instructions, so long as the laws of the General Assembly were not thereby amplified. 1930 Ohio Atty.Gen.Ops. No. 1423. The Supreme Court of Ohio has stated that the orders of the Secretary of State, which are to be obeyed by boards of elections, must be lawful orders supported by the Revised Code. *State ex rel. Sagebiel v. Montgomery Cty. Bd. of Elections* (1944), 144 Ohio St. 162, 29 O.O. 259, 57 N.E.2d 661; see *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 8, 598 N.E.2d 1152, 1154–1155.

In the petition, relator relies on Secretary of State's Directive No. 92–14 dated March 30, 1992, which provides:

"A candidate may withdraw his/her name from the primary election ballot after the withdrawal date specified in O.R.C. 3513.30, as long as the ballots have not been printed. Any withdrawal past the time the ballots have been printed should be accepted and votes for the withdrawn candidate should not be counted. The purpose of the withdrawal statute is to allow sufficient time to remove a candidate's name from the ballot. The statute is therefore directive in nature and not mandatory."

At the time the Secretary of State issued this directive, R.C. 3513.30 provided:

"Any person filing a declaration of candidacy may withdraw as such candidate at any time prior to four p.m. of the sixty-fifth day before the primary election. If such candidate's declaration of candidacy was filed with the secretary of state, his statement of withdrawal shall be addressed to and filed with the secretary of state. If such candidate's declaration of candidacy was filed with a board of elections, his statement of withdrawal shall be addressed to and filed with such board."

Since 1992, the General Assembly amended the statute and specifically included a "fiftieth day" deadline for withdrawals in presidential primary years, even though omitting a deadline for nonpresidential primary years. See R.C. 3513.30(B).

The 1992 directive of the Secretary of State, as applied to the current version of the withdrawal statute for purposes of the case *sub judice*, clearly "amplifies" the language of the statute, and, in fact, extends the time period for a candidate's withdrawal in direct contravention of the statute. Relator has cited no authority which permits the Secretary of State, a part of the executive branch of the government, to extend the filing deadline for the withdrawal of a candidate prior to a presidential primary election as designated by the General Assembly, the legislative branch of the government. Neither party has submitted or is relying upon any more recent directive of the Secretary of State that interprets R.C. 3513 .30 as amended.

In the relator's brief in opposition and cross-motion for summary judgment, relator relies on Secretary of State Advisory No. 96–02, dated February 1, 1996. Advisory No. 96–02 provides procedures relating to absentee ballots [4] that are to be followed, pursuant to R.C. 3513.30(E) by boards of elections if a certified candidate withdraws in accordance with the withdrawal statute. R.C. 3513.30(E) provides:

"(E) When a person withdraws under division (B) or (D) of this section, the board of elections shall remove the name of the withdrawn candidate from the ballots to the extent practicable in the time remaining before the election and according to the directions of the secretary of state. If the name is not removed from all ballots before the day of election, the votes for the withdrawn candidate are void and shall not be counted."

Pursuant to this section of the withdrawal statute, had relator filed her statement of withdrawal prior to the fiftieth day before the presidential primary as provided in sections (B) and (D) of R.C. 3513.30, the board would have had the duty to remove relator's name from the ballot to the extent practicable in the time remaining before the election and according to the procedures in Advisory No. 96–02, if not otherwise superseded. Because relator did not comply with the requirements of the withdrawal statute, the board had no duty enforceable in mandamus pursuant to R.C. 3513.30(E) to remove relator's name from the ballot.

What is interesting intellectually and what neither party has briefed is whether an "advisory" or "directive" of the Secretary of State is tantamount to a "rule" of the Secretary of State, or merely an instruction or other pronouncement. The General Assembly has delegated authority to the Secretary of State to prepare "rules and instructions" for the conduct of elections, R.C. 3501.05(C), but has required the boards of elections to perform "such other duties as are prescribed by law or the rules of the secretary of state" without mention of the instructions

---

4. R.C. 3509.01 provides in part that absentee ballots "shall be printed and ready for use on the twenty-fifth day before the day of a presidential primary election."

of the Secretary of State, R.C. 3501.11(P). Assuming that the board in fact violated something other than a "rule" of the Secretary of State, it is unclear whether relief in mandamus through the judiciary would be appropriate or whether some sort of disciplinary procedure through the Secretary of State's office, as alluded to by the Attorney General's office in 1930 Ohio Atty.Gen.Ops. No. 1423, would be the sole recourse. In any event, even if we were to conclude that the board contravened Secretary of State Directive No. 92–14 and/or Secretary of State Advisory No. 96–02, it is unclear whether such violation(s) would warrant relief in mandamus. Mandamus is a remedy that is to be exercised with great caution and only when the way is clear. *State ex rel. Taylor v. Glasser* (1977), 50 Ohio St.2d 165, 4 O.O.3d 367, 364 N.E.2d 1.

Upon careful review it appears from the material submitted by the parties[5] that in reaching its decision, the board considered, among other items, the withdrawal statute, the legal opinion of counsel in favor of withdrawal, conversations with the Secretary of State's office on January 27, 2000, wherein the board was advised that the fifty-day deadline cannot be waived, and Secretary of State Blackwell's Ohio Elections Update dated December 1999 wherein it is reported:

"Withdrawal Deadlines

"Ohio law imposes withdrawal deadlines for primary candidates in presidential years. In 2000, the deadline for candidates, other than partisan presidential candidates, to withdraw from the March 7 primary is 4 p.m. on January 18 (R.C. 3513.30(B)). The deadline for presidential candidates ro [sic] withdraw from the primary is 4 p.m. on February 7 (R.C. 3513.30(C)).

"Any withdrawal must be made in writing and be addressed to, and filed with, the board of elections or, if appropriate, the Secretary of State's office. (R.C. 3513.30(D))."

The board had conflicting opinions concerning the withdrawal statute and chose to rely on the language of the statute and the most recent information from the current Secretary of State. There is no indication under these circumstances that the board acted unreasonably, arbitrarily, or unconscionably in rendering its decision.

A writ of mandamus may not be issued to compel the performance of a "practical thing to do," but only when there is a clear duty specially enjoined by law to perform a specific act. Relator has cited no statutory duty of respondent that clearly requires respondent to remove a candidate's name from a presidential primary ballot when the candidate withdraws beyond the fifty-day deadline

---

5. In the exigency of an election writ action and in the absence of any objection by respondent, this court has reviewed and considered all material supplied by the relator, including documents not strictly complying with evidentiary rules.

specified in R.C. 3513.30(B). Relator has thus failed to demonstrate the requisites for the issuance of a writ of mandamus.

Accordingly, the motion for summary judgment of respondent is granted, and the cross-motion for summary judgment of relator is denied. The alternative writ issued on February 3, 2000, is hereby dissolved.

Writ denied. Costs to relator.

*Writ denied.*

TIMOTHY E. MCMONAGLE, P.J. and SPELLACY, J., concur.