DECISION
{¶ 1} Relator, Tony Asti, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On May 19, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court deny the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 2} Relator argues that the magistrate should have given deference to the interpretation of R.C. 124.11(D) set forth by the State Personnel Board of Review ("SPBR") hearing officer in a decision dismissing relator's appeal for lack of jurisdiction. Therein, the hearing officer interpreted R.C. 124.11(D) to require that the state allow the exercise of so-called "fallback rights" at any time subsequent to an employee's initial appointment to the unclassified service, even when the employee is not being terminated from the classified service, and, like relator, is simply being appointed to a different unclassified position.
 {¶ 3} Relator cites the case of Northwestern Ohio Bldg. Constr. Council v. Conrad (2001), 92 Ohio St.3d 282,750 N.E.2d 130 for the proposition that "a court must give due deference to the agency's reasonable interpretation of the legislative scheme,"[1] and argues that the magistrate erred in not adopting the SPBR's "interpretation" of how and when fallback rights under R.C. 124.11(D) are triggered. Conrad is inapposite and relator's reliance thereon is misplaced.
 {¶ 4} Conrad involved the issue whether, absent express legislative direction, the Bureau of Workers' Compensation ("BWC") may permissibly use state insurance fund ("SIF") proceeds to draw the funds necessary to make required administrative and performance-incentive payments to managed-care organizations ("MCOs") as part of the Health Partnership Program ("HPP") mandated by R.C. 4121.44 and 4121.441.
 {¶ 5} The Conrad court held that, when the legislature mandates that an agency administer a program, but leaves inevitable gaps in the statutes as to all of the details of the administration of the program, the agency may make rules in order to fill in these gaps. The court of appeals in Conrad had held that because the agency did not have the express legislative authority to use SIF monies to make payments to MCOs as part of the HPP, such use of the SIF was unconstitutional. The Supreme Court of Ohio reversed, finding that the BWC acted reasonably when it promulgated rules to flesh out the day-today workings of the mandated HPP. As part of the rationale for its holding, theConrad court set forth the following:
As the United States Supreme Court has noted, "the power of an administrative agency to administer a * * * program necessarilyrequires the formulation of policy and the making of rules tofill any gap left, implicitly or explicitly," by the legislature. (Emphasis added.) Morton v. Ruiz (1974),415 U.S. 199, 231, 94 S. Ct. 1055, 1072, 39 L. Ed. 2d 270, 292. Our ownSwallow case implicitly recognized that no set of statutes and administrative rules will answer each and every administrative concern. Id., 36 Ohio St. 3d 55, 521 N.E.2d 778. When agencies promulgate and interpret rules to fill these gaps, as they must often do in order to function, "courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command." Id. at 57,521 N.E.2d at 779. We accord due deference to the BWC's interpretation, so long as it is reasonable. See State ex rel. McLean v. Indus. Comm.
(1986), 25 Ohio St. 3d 90,92, 25 Ohio B. Rep. 141, 143,495 N.E.2d 370,372 (holding that commission did not abuse discretion in awarding compensation for loss of foot even though claimant suffered amputation five inches below the knee).
Id. at 289. (Emphasis sic.)
 {¶ 6} The Conrad court went on to determine that the BWC's use of SIF monies to pay MCOs was consistent with the permissible uses of the fund enumerated in R.C. 4123.30, and was thus not unconstitutional. In the case at bar, we are not presented with aConrad-like situation where a statute mandates an agency's administration of a program, the agency engages in gap-filling rulemaking, and a party has challenged the agency's application or "interpretation" of the statute as manifested in the agency's rules. The SPBR's "interpretation" of R.C. 124.11(D) respecting when and how the fallback rights afforded thereby are triggered does not involve agency administration of a statutorily mandated program; rather, the SPBR's commentary regarding the issue amounts to nothing more than statutory interpretation, which is a judicial function, not an administrative one. See Ohio Motor BusAssoc. v. Toledo Area Regional Transit Auth. (Mar. 11, 1975), 10th Dist. No. 74AP-431 (holding that statutory interpretation is a power reserved for the courts and not for administrative agencies.)
 {¶ 7} Recently, in the case of Maitland v. Ford Motor Co.,103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, the Supreme Court of Ohio similarly held that the Ohio Lemon Law's silence as to the use of mileage setoffs of arbitration awards or settlement offers does not constitute a prohibition of the use of such setoffs. After Ohio's Lemon Law went into effect, the Ohio Attorney General initiated a policy that expressly authorized qualified dispute-resolution boards to use a formula allowing a setoff for use of the vehicle. The policy remained in place for years. In concluding that the policy was not violative of Ohio's Lemon Law, the court relied, in part, upon the following principles:
[C]ourts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which thelegislature has delegated the responsibility of implementing thelegislative command. Therefore, under these circumstances, where the legislature has granted the authority to the Attorney General to adopt rules governing the informal dispute-resolution mechanisms, we defer to the Attorney General's policy on mileage setoffs.
Id. at ¶ 26. (Citations omitted.) (Emphasis added.)
 {¶ 8} In the present case the SPBR's "interpretation" of R.C.124.11(D) was not manifested in a rule formulated to fill a gap in a specific statute delegating responsibility for implementation of a legislative mandate, as in Conrad andMaitland. Rather, relator proposes that we abdicate our role as interpreter of a statute having nothing whatsoever to do with agency rulemaking directed to the administration of legislative commands. We decline relator's invitation to do so. We are not required to adopt the SPBR's interpretation of R.C. 124.11(D).
 {¶ 9} Furthermore, we find R.C. 124.11(D) to be clear and unambiguous, not requiring any judicial interpretation. The magistrate correctly noted that R.C. 124.11(D) is silent as to what event or circumstance triggers the fallback rights conferred therein. The magistrate then concluded that R.C. 124.11(D) does not obligate respondent, Ohio Department of Youth Services ("ODYS"), to return relator to his position in the classified service upon his request, which request was made when ODYS appointed him to a successive unclassified position that he did not wish to take. We agree.
 {¶ 10} As the Supreme Court of Ohio held long ago, in the case of Davis v. State ex rel. Pecsok (1936), 130 Ohio St. 411, 5 O.O. 20, 200 N.E. 181:
In proceedings in mandamus a court can not create a legal duty. The creation of a legal duty is a distinctive function of the legislative branch of government. The most that a court can do in mandamus is to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station, when a clear right to such performance is presented.
Id. at paragraph one of the syllabus. See, also, State ex rel.Pipoly v. State Teachers Retirement Sys., 95 Ohio St.3d 327,2002-Ohio-2219, 767 N.E.2d 719, at ¶ 18.
 {¶ 11} "When an asserted legal right is based on a statutory provision, the relator must demonstrate that the statute, as applied and interpreted, gives rise to the requisite clear legal right." State ex rel. Deters v. Wilkinson (1995),72 Ohio St.3d 54, 56, 647 N.E.2d 480. See, also, State ex rel. Myers v.Chiaramonte (1976), 46 Ohio St.2d 230, 75 O.O.2d 283,348 N.E.2d 323. In the present case, relator asserts that R.C. 124.11(D) provides him the clear legal right to resume the position in the classified service that he held immediately prior to his first appointment to the unclassified service. But that statute does not provide relator with such a clear legal right, nor does it set out a clear legal duty for ODYS to allow relator to exercise "fallback rights" on demand in this manner. As noted earlier, the statute is entirely silent as to the circumstances or events that would trigger such fallback rights. See State ex rel. Naples v.Vance, 7th Dist. No. 02-CA-181, 2003-Ohio-4738, at ¶ 10-11.
 {¶ 12} Relator also argues that Ohio Adm. Code 123:1-5-03(C) provides a clear legal right to the relief he seeks, and argues further that the magistrate erred in rejecting this argument. We find no merit in this contention. Ohio Adm. Code 123:1-5-03(C) provides, "[u]nclassified appointments made pursuant to division (D) of section 124.11 of the Revised Code may be rescinded by the appointing authority or upon the request of the employee." Like the magistrate, we conclude that the plain language of this rule dictates that rescission of the appointment to the unclassified service is entirely permissive, not mandatory, including when it is the employee who desires rescission. Thus, we find that Ohio Adm. Code 123:1-5-03(C) does not provide relator with a clear legal right to the relief he seeks.
 {¶ 13} Finally, relator argues that the magistrate erred in rejecting his argument that the doctrine of res judicata precludes this court from reaching a result contrary to the SPBR's conclusion that relator has a clear legal right to exercise fallback rights. Relator argues that the doctrine precludes relitigation of the issue because the same was fully litigated by the parties before the SPBR and was determined by that tribunal.
 {¶ 14} "Collateral estoppel, an aspect of res judicata,
prevents a question that has been actually and necessarily determined by a court of competent jurisdiction in a first cause of action from being relitigated between the same parties or their privies in a second, different cause of action." State exrel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. ofElections (1991), 60 Ohio St.3d 44, 46, 573 N.E.2d 596, citingGoodson v. McDonough Power Equip., Inc. (1983),2 Ohio St.3d 193, 195, 2 OBR 732, 443 N.E.2d 978. The doctrine is applicable to administrative hearings of a quasi-judicial nature; that is, hearings for which both parties were afforded notice, a hearing, and an opportunity to present evidence. Prairie Twp. Bd. ofTrustees v. Ross, 10th Dist. No. 03AP-509, 2004-Ohio-838, ¶ 12. See, also, Set Products, Inc. v. Bainbridge Twp. Bd. of ZoningAppeals (1987), 31 Ohio St.3d 260, 263, 31 OBR 463,510 N.E.2d 373.
 {¶ 15} Here, however, the SPBR's decision did not deal with the issue whether relator, while employed by the state in an unclassified capacity, may exercise fallback rights under R.C.124.11(D) at will; rather, the issue determined by the SPBR was whether that agency had jurisdiction to hear relator's appeal at all. The SPBR has the power to hear appeals only of employees in the classified state service. R.C. 124.03(A). Thus, the SPBR needed only to find — as it ultimately did — that relator was not in the classified state service when the events subject of his appeal took place, in order to find that the agency lacked jurisdiction over the appeal.
 {¶ 16} We agree with the magistrate's conclusion that this case is similar to the case of Rabin v. Anthony Allega CementContractor, Inc. (Nov. 6, 2001), 10th Dist. No. 00AP-1200. In that case, this court held that statements of another tribunal will not be given preclusive effect when the statements were made in the course and context of deciding a wholly different issue than the one presented to the second tribunal; that is, when the statements amount to nothing more than "inartful dicta unnecessary to the [first tribunal's] judgment." Id., 2001 Ohio App. LEXIS 4921, at *25. In the present case, the SPBR's commentary regarding the effect of R.C. 124.11(D) on relator's right to assert fallback rights was unnecessary to its determination that it lacked jurisdiction over relator's appeal. Therefore, we accord no preclusive effect to the statements and regard the same as mere dicta.
 {¶ 17} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the same, and find that the magistrate correctly and appropriately determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, and supplement the same with the additional findings and conclusions hereinabove, and deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Tony Asti, : Relator, : v. : No. 03AP-998 Ohio Department of Youth Services: (REGULAR CALENDAR) and Geno Natalucci-Persichetti, : Respondents. :
 MAGISTRATE'S DECISION Rendered on May 19, 2004. Buckley King, LPA, and James E. Melle, for relator.
Jim Petro, Attorney General, Nicole S. Moss and Jack W.Decker, for respondents.
 IN MANDAMUS {¶ 18} Relator, Tony Asti, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Department of Youth Services ("ODYS") to reinstate relator to his fall-back position as a Fiscal Officer 4 in the classified service, or reinstate relator to his position as Deputy Director 5, pursuant to R.C. 124.11(D), pay relator back pay and lost benefits from the time he was wrongfully removed from his position as Deputy Director 5, and award relator costs and attorney's fees in maintaining this action, as well as interest.
Findings of Fact:
 {¶ 19} 1. Relator was hired by ODYS as an account clerk in August 1990. At the time, relator was a classified employee.
 {¶ 20} 2. Between 1991 and 1998, relator was promoted several times, ultimately to the position Fiscal Officer 4.
 {¶ 21} 3. Prior to October 24, 1999, all of relator's employment with ODYS was in the classified service.
 {¶ 22} 4. By letter dated July 13, 1999, relator was appointed from the classified service to a position in the unclassified service as follows:
I want to thank you for agreeing to take the post of Bureau Chief over the Fiscal Management Bureau within the Division of Finance and Planning. * * *
This appointment is being made and accepted in accordance with Chapter 124 of the Ohio Revised Code. Even with this change you will remain in your current classification of Fiscal Officer 4 under the E-1 rate schedule and will, in accordance with Chapter 124 of the Ohio Revised Code, retain the right to resume the position you previously held, or a comparable position, in the classified service at Central Office as outlined in this section.
Relator assumed this position in October 1999.
 {¶ 23} 5. In April 2001, relator was asked to serve as the Acting Deputy Director for ODYS's Division of Finance and Planning. Relator assumed the directorship on a permanent basis in December 2001.
 {¶ 24} 6. On December 16, 2002, relator was offered the option of accepting a demotion to the unclassified position of Correctional Deputy Superintendent at Scioto Juvenile Correctional Facility in Delaware, Ohio, or resigning his position with ODYS. In accepting this transfer, relator signed a consent to voluntary transfer and demotion and noted as follows at the bottom:
I am signing this statement with the understanding that I will be able to research the right to fall back to my previous position in the classified service regardless of the number of classified positions I held.
 {¶ 25} 7. On January 2, 2003, relator filed an appeal with the State Personnel Board of Review ("board"). The board noted that two questions were presented: (1) whether the board had jurisdiction to review the apparent denial of a request to exercise fall-back rights; and (2) whether relator should have been allowed to exercise his fall-back rights to resume a Fiscal Officer 4 classified position or similar position. Because the board determined that it did not have jurisdiction, relator's appeal was dismissed. In dicta, the administrative law judge determined that it appeared that, pursuant to R.C. 124.11(D), relator had a clear right to resume the Fiscal Officer 4 or similar position with ODYS in the classified service.
 {¶ 26} 8. On October 8, 2003, relator filed the instant mandamus action in this court.
 {¶ 27} 9. Both parties filed motions for summary judgment and memoranda contra.
 {¶ 28} 10. Because the magistrate could not say that, as a matter of law, either party was entitled to judgment in their favor, the matter is currently before the magistrate upon relator's assertion that he had an absolute right to exercise his fall-back rights and that ODYS abused its discretion in refusing to permit him to resume his former position in the classified service.
 {¶ 29} 11. In the event that this magistrate was to determine that ODYS did abuse its discretion, evidence will be presented as to the issue of damages.
 {¶ 30} 12. This matter is currently before the magistrate on the merits.
Conclusions of Law:
 {¶ 31} In this mandamus action, relator asserts that ODYS had a clear legal duty, in December 2002, to reassign him to his position as a Fiscal Officer 4 when ODYS offered him the option of accepting a demotion to the position of Correctional Deputy Superintendent at Scioto Juvenile Correctional Facility. As such, relator asserts that ODYS should be ordered to either reinstate him to the position of Deputy Director 5 or reinstate him to his classified job as Fiscal Officer 4.
 {¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. For the reasons that follow, this magistrate concludes that relator is not entitled to a writ of mandamus.
 {¶ 33} R.C. 124.11(D) provides, in pertinent part, as follows:
* * * A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service. * * *
 {¶ 34} Ohio Adm. Code 123:1-5-03(C) supplements R.C. 124.11
and provides, in pertinent part, as follows:
Unclassified appointments made pursuant to division (D) of section 124.11 of the Revised Code may be rescinded by the appointing authority or upon the request of the employee.
 {¶ 35} In asserting that he is entitled to a writ of mandamus, relator argues that he had an absolute right to resume his position in the classified service at any time upon his request. As such, when he indicated that he wanted to leave the unclassified service and return to the classified service, relator insists that ODYS was required to reinstate him to his position as a Fiscal Officer 4 in the classified service. Relator asserts that, absent his unqualified acceptance of a reassignment to a different unclassified job, ODYS could not move him to any other unclassified position.
 {¶ 36} In asserting this position, relator first notes that R.C. 124.11(D) is one of a number of statutes enacted to provide job protection and job security for public employees in Ohio.[2] Relator next asserts that the promulgation of R.C.124.11(D) constituted a partial legislative reversal of the Supreme Court of Ohio's decision in Chubb v. Ohio Bur. ofWorkers' Comp. (1998), 81 Ohio St.3d 275, syllabus, wherein the court held as follows:
In an appeal pursuant to R.C. 124.34 by a terminated public employee who claims classified status, the state may assert defenses of waiver and estoppel if the employee has accepted appointment to a position designated as unclassified and also has accepted the benefits of that unclassified position, regardless of whether the employee's actual job duties fall within the classified status.
 {¶ 37} Following the promulgation of R.C. 124.11(D), a classified employee who accepts an appointment to the unclassified service cannot simply be fired from that unclassified job. Instead, it is clear that the employee would resume their former position of employment in the classified service. The reason for this is clear. Civil service employees are divided into two categories: classified and unclassified positions. Unlike unclassified employees, those employed in the classified service may only be removed for good cause according to the procedures enumerated in R.C. 124.34 and related rules and regulations. The classified civil servant may appeal the termination of their employment whereas the unclassified employee is not protected by the statutory and regulatory procedures. Following the enactment of R.C. 124.11(D), the former classified employee who accepts an unclassified appointment, cannot simply be terminated from their unclassified position without being returned to the classified service.
 {¶ 38} Relator argues that R.C. 124.11(D) clearly provided him with an absolute right to demand that ODYS reassign him to his former Fiscal Officer 4 position in the classified service when he asked to exercise his fall-back rights. According to relator, all an employee appointed to the unclassified service under R.C. 124.11(D) has to do is request that he/she be returned to their classified job and the appointing authority is obligated, by law, to reinstate that employee. Instead of following the law, relator argues that ODYS transferred him to another unclassified position.
 {¶ 39} Relator is incorrect to assert that ODYS was obligated to return him to his position in the classified service simply because he requested it. R.C. 124.11(D) is completely silent as to when an employee's "fall-back" rights can be exercised. However, one thing is certain; in the event that the employee appointed to the unclassified service was to be terminated, that employee clearly has an absolute right to exercise their "fallback" rights and resume their position in the classified service. R.C. 124.11(D) makes it clear that the employee appointed to the unclassified service cannot be terminated from their employment without first being returned to the classified service where they would have the protection of the rules and regulations. However, short of termination, R.C. 124.11(D) does not provide an employee with an absolute right to return to their classified position at any point in time, simply because the employee requests it. Furthermore, Ohio Adm. Code123:1-5-03[3] provides that an unclassified appointmentmay be rescinded by the appointed authority or upon the request of the employee. It is undisputed that the word may, unlike the word "shall," is permissible. Further, if, as relator argues, the enactment of R.C. 124.11(D) was to reverse the result in Chubb,
then it appears the statute was designed to trigger when the employee's unclassified service comes to an end. As such, relator is incorrect in asserting that ODYS was obligated to return him to his position in the classified service upon his request. Instead, it is apparent that ODYS had discretion to do so.
 {¶ 40} Relator also contends that the doctrine of collateral estoppel applies and that, because the administrative law judge at the board determined that relator had a right to resume his position in the classified service, ODYS was thereafter obligated to return him to that position. Relator cites State ex rel. Oganv. Teater (1978), 54 Ohio St.2d 235, and asserts that ODYS is precluded from asserting that the board's decision is not binding upon ODYS and this court. Relator insists that this court must find that ODYS was obligated to reinstate him at his request because ODYS did not assert the affirmative defense and counterclaim that the board abused its discretion. Relator's argument lacks merit.
 {¶ 41} In Ogan, after the court noted that the administrative agency did not have a right to appeal from the adverse decision of the board, the court noted that an action in mandamus could be brought. Where the employee filed first in the court of appeals, the agency could assert the affirmative defense and counterclaim of an abuse of discretion. However, in the present case, there has been no adverse ruling from the board. Instead, the board determined that it did not have jurisdiction to hear relator's case and then went on, in dicta, to address the issue of relator's fall-back rights.
 {¶ 42} Collateral estoppel prevents parties from relitigating in a subsequent case facts and issues which were fully litigated in a previous case. State ex rel. Stacy v. Batavia Local SchoolDist. Bd. of Edn., 97 Ohio St.3d 269, 2002-Ohio-6322. This court specifically stated in Rabin v. Anthony Allega CementContractor, Inc., (Nov. 6, 2001), Franklin App. No. 00AP-1200, that the concept of issue preclusion is inapplicable when it is based upon dicta from a court which was unnecessary to the court's determination of the claim. In the present case, the board determined that it lacked jurisdiction over relator's appeal. Thereafter, in dicta, the administrative law judge went on to explain why she believed that relator was entitled to exercise his "fall-back" rights. However, those statements were completely unnecessary to the board's determination that it lacked jurisdiction in the first place and is not binding on this court.
 {¶ 43} It is clear that, in the event ODYS wanted to terminate relator's employment position in the unclassified service, ODYS would have been required, by law, to return relator to his former position of employment within the classified service. That did not happen in the present case. Instead, ODYS appointed relator to a different position within the unclassified service. R.C. 124.11(D) specifically provides for multiple appointments and the employee retains the right to return to their position in the classified service regardless of the number of appointments made within the unclassified service. While relator indicated that he wanted to research his "fall-back" rights and he eventually insisted that he be permitted to exercise his "fall-back" rights, ODYS was not required to return him to that position unless or until ODYS no longer desired to keep relator employed in the unclassified service.[4] As such, relator has not shown a clear legal right to the relief prayed for nor has he shown that respondent is under a clear legal duty to perform the act requested. As such, relator is not entitled to a writ of mandamus.
 {¶ 44} Based on the foregoing, this magistrate finds that relator has not demonstrated that ODYS has a clear legal duty to return him to his position in the classified service. As such, relator has not demonstrated that he is entitled to a writ of mandamus and this court should deny his request for same.
/s/ Stephanie Bisca Brooks
 Stephanie Bisca Brooks Magistrate
[1] Objections of Relator, 7.
[2] Similar provisions are found in R.C. 4121.121, 5119.071,5120.38, 5120.381, 5120.382, 5120.08, 5139.02, and 5501.19.
[3] In briefing this matter, neither relator nor respondent cited to this code provision. At the request of the magistrate, the parties were given the opportunity to brief the applicability of the administrative code to this case. The administrative law judge at the State Personnel Board of Review did not consider the applicability of the administrative code to the situation.
[4] Relator argues that, if he is not entitled to be returned to his former position upon request, then ODYS could transfer him anywhere in Ohio to any unclassified position and he would have no recourse. However, that issue and whether or not "constructive discharge" could apply, is not currently before this court.